IN THE MATTER OF STORY COUNTY, IOWA, DRAINAGE DISTRICT No. 34, the ST. PAUL & DES MOINES RAILROAD COMPANY, and the ST. PAUL & KANSAS CITY SHORT LINE RAILROAD COMPANY, Appellants, v. STORY COUNTY, IOWA, the BOARD OF SUPERVISORS OF STORY COUNTY, IOWA, STORY COUNTY, IOWA, DRAINAGE DISTRICT No. 34, and all other land-owners and interested parties within said drainage district No. 34, Appellees.

**Drainage:** SUBSTANTIAL BENEFIT: ASSESSMENTS. A railway company constructed a drain for the purpose of draining its depot grounds, discharging the water some distance away into a barrow pit on its right of way. Other drains were also constructed, discharging into the same pit, thus forming a considerable body of water upon the right of way. *Held,* that the establishment of a drainage system entirely removing the body of water and rendering the right of way thoroughly dry on both sides of the track was of substantial benefit to the railway company, and that it should bear a substantial rather than a nominal portion of the expense.

**Same:** DISPROPORTIONATE ASSESSMENT. The assessment of $700.00 against the railway company, having but twenty-six acres within the district comprising 490 acres, the system costing $5,000.00, was disproportionate to the other assessments and is reduced to $400.00.

*Appeal from Story District Court.*—HON. C. G. LEE, Judge.

SATURDAY, JUNE 20, 1914.

APPEAL from an assessment of benefits in a drainage proceeding. From the assessment ordered against it by the board of supervisors, the plaintiff appealed to the district court of Story county. Upon trial had, the assessment was affirmed by the district court. From such order, the plaintiff has again appealed.—*Modified* and *Affirmed.*

*F. W. Sargent, J. H. Johnson* and *E. H. Addison*, for appellants.

*B. B. Welty*, for appellees.

EVANS, J.—The drainage district involved is known as No. 34. It comprises in the main sections 22, 23, 26, and 27, township 85, range 22. The enterprise includes a certain main drain, with certain lateral branches extending into sub-districts. The controversy herein relates to the lateral branch known as H-1, and to the subdistrict served thereby. This lateral branch, as well as the subdistrict served thereby, is all contained in sections 22 and 27; the subdistrict comprising the western part of said drainage district No. 34. The following map will aid an understanding of the discussion:

This shows the western boundary of the drainage district No. 34, as well as the eastern boundary of the subdistrict in question. The town of McCallsburg is located on the north line of section 22. Appellant's line of railway runs south through and from said town. The general topography of the ground within this district is such that, prior to drainage, much standing water was held in its depressions. The general course of the overflow was southerly and easterly. The subdistrict in question included an area of 496 acres. This included the principal part of the town of McCallsburg. It included about twenty-six acres of the right of way of the appellant, of which the depot grounds at McCallsburg form a part. The outlet of this lateral branch was near the center of section 27. At this point, it joined lateral branch H. From this junction the united flow of both branches was carried south into the main drain of the district near the south line of section 27. The entire cost of actual construction of this lateral branch was about $4,000. To this sum was added about $900 additional to cover cost of administration and its proportionate cost of outlet. This made a sum total of about $4,900. Of this sum, $700 was assessed against appellant as its proportion of benefits to its right of way. Two contentions are presented by appellant for our consideration. The first is that it received no substantial benefit whatever from the drainage improvement, and that it should not have been assessed more than a nominal amount. The second contention is that, if it be found that it was fairly subject to substantial assessment for benefits, the amount assessed against it was grossly disproportionate, as compared with the other assessments.

I. Taking up the first contention, a few further details of fact must be noticed. Appellant's railroad was constructed about ten years ago. For most of the way through the district its track is laid upon an embankment from four to six feet high. Originally its depot grounds and surroundings were very wet. It thereupon constructed at its own expense a tile drain for a

1. DRAINAGE: substantial benefit: assessments.

distance of about one thousand feet, having its outlet in a deep borrow pit upon its own right of way, located about four hundred feet north of the center of section 22. Beginning at this outlet, it constructed its drain north through the depot grounds, as indicated by the dotted line upon the map. This was done several·years ago. At about the same time, and beginning at the same outlet, the town of McCallsburg constructed a drain northeasterly through the town, and thereby conducted the drainage of the town into the same pit. From this outlet south, an open ditch' was provided by the railway company, which took the overflow. A body of water, however, was formed in the borrow pit, which was one thousand to one thousand five hundred feet long and of varying width. The outlets referred to were of course submerged in this body of water and brought their contents into it from beneath. Of the area included in the subdistrict, about one hundred and forty acres lie on the west side of the railway track. Surface openings were and are maintained through the railway embankment for the passage of water from the west side to the east in its natural course. The general course of the lateral branch runs somewhat parallel to the railway. At a point one thousand feet south of the center of section 22, the drain penetrated the railway right of way, and a short branch was cut across to the west side. From this junction point, the main drain was continued north on the right of way on its east side for a distance of one thousand feet. At this point a short branch was again carried across the right of way so as to connect with the lands on the west side of the railway. This point, which is at the center of section 22, marks the northern terminus of the drain. It does not connect with the outlets in the borrow pit already referred to, being four hundred feet distant therefrom. It is effective, however, to carry away the water which had previously formed a pool in the borrow pit. The purpose of the two short branches or cross cuts across the right of way of the railway was to furnish underground connection to the lands within the sub-

district lying to the west of the railway. These crosscuts were constructed by the railway company at its own expense, amounting to about $150. The right of way has been rendered thoroughly dry on both sides of the track. That the railway company thereby received substantial benefit of drainage from the improvement, as constructed, is too plain for fair argument to the contrary. That it would have been benefited more if the construction of the drain had been carried four hundred feet higher up the course to a connection with the outlet at the borrow pit is also clear to us. But the appellant does not make this latter contention. On the contrary, it contends that it would be no benefit to it to have such connection made, and it asserts that it will never make the same on its own account. We are not so much concerned with what it will actually do in that respect as with the question what it may advantageously do. Present intentions are sometimes influenced by the needs of an argument. When the argument is done, the advantage available to the appellant at this particular point may not be so difficult of discernment. We are convinced from the record, therefore, that the benefit to the appellant is such that it ought to bear a substantial, rather than a nominal, portion of the expense.

II. Was the amount assessed against the appellant disproportionate and therefore excessive? This question presents more difficulty than the first. As already indicated, this was one-seventh of the total cost of the improvement. Although twenty-six acres of the right of way were included in the district, only about one-half thereof was within the right of way which extended south from the northern terminus of the improvement as constructed. The other half thereof extended to the north from such northern terminus and was directly served by the tile drain constructed by the railway company itself several years ago. The benefit received by the upper half of such right of way from the new improvement was the benefit of outlet. The method adopted by the commissioners for fixing

2. Same: disproportionate assessment.

the amount of the assessment was somewhat indefinite. It was necessarily so. It would be impossible to lay down any definite rule for measuring such benefits. They can only be ascertained approximately, and must be estimated in a pretty general way. We are disposed to be slow to interfere with such estimates when made. We cannot, however, refuse to give careful consideration to all the facts and circumstances appearing in evidence. Upon such consideration, we must approve or disapprove. The commissioners were witnesses upon the hearing in the district court. From their testimony it appears that the amount assessed against the railway company was in effect made up of two items. One item of $440 was the cost of constructing the one thousand feet of the improvement upon the right of way. The remaining $260 was deemed to represent other general benefits accruing to the company by reason of the improvement. It is to be noted here that the part of the drain which was laid upon the right of way was a departure from the regular water course. This particular part of the course of the drain was selected because of the existence of borrow pits which could be utilized to the saving of excavation. The water course proper bore to the east of this part of the drain. The theory of charging up as benefit the full cost of construction of any part of the drain against the particular land upon which it was located was not followed as to any other tract in the subdistrict. What is called the "base 40" or the "100 per cent. 40" was the particular tract which was deemed to have received the greatest benefit, as compared with any other farm tract within the district. This was the S. W. ¼ of S. E. ¼ of section 22. The drain was laid through it for its full dimension, being more than thirteen hundred feet, and at an actual cost of $1,600. The full assessment against this forty-acre tract was $770. The forty-acre tract immediately north thereof, upon which was laid approximately eight hundred feet of the drain, and which lay contiguous to that part of the drain laid upon the right of way, was assessed for $394 of benefits. The forty-acre tract lying south of the "base 40,"

across which the drain was laid for a distance of more than thirteen hundred feet, was assessed at $480. The forty-acre tract south of that, with an equal amount of improvement constructed thereon, was assessed $333. The assessment of all lands lying west of the railroad totaled less than $500. The assessment of the full cost of construction against the railway company for that part of the improvement lying on its right of way was predicated upon the theory that it alone got the exclusive benefit of that part of the drain. Nothing could be plainer upon this record, we are constrained to say, than that the real purpose of the construction of that particular section was to furnish an outlet to the lands lying on the west of the right of way and incidentally to the adjoining land upon the east. We are unable to discover any fair reason in the record why a different rule in this respect was applied to the railway company than was applied to the other beneficiaries of the improvement. This subdistrict included streets in McCallsburg to the length of one-half mile. These benefits were assessed at $15. Two miles of highway were included. Three highways were crossed by the drain through low ground and ponds. These benefits were assessed at a sum total of $200. The following testimony of one of the commissioners indicates the general ground upon which the assessment appears to have been based:

Q. Now, Mr. Stafford, take the Ole C. Hougen piece of ground upon which you admitted the construction of this improvement was greater than the assessment, and compare that with the tract of ground belonging to this railroad on which you have made the assessment much larger than the construction on the very much smaller piece of ground. Why did you do that? A. Well, there is quite a difference in the earning capacity of that piece of ground and the railroad. Q. You were taxing on the earning capacity? A. Isn't that worth more? The railroad is benefited immediately where that is not. Q. You don't mean to say that a construction can be put eighty rods across a 40-acre piece of ground and not benefit it immediately? A. What would be the immediate benefit? Q. The drainage of it. A. Well, what improvement

or benefit would the property owner derive? Q. Don't you consider the amount of this improvement is a benefit? A. I will say the land is worth more after it is drained. Q. But it don't get any immediate benefit? A. They don't derive any immediate benefit. He has got to go to work and tile it and then prepare it for a crop, all those things, before he derives any benefit. Q. So he does not get the benefit at all from the initial improvement? A. Not immediately. Q. But the railroad gets more than the cost of the improvement? A. It would scem so, yes.

In support of the assessment, counsel for the appellees is driven to the following ingenious argument:

Railroads should be in the foremost rank and file of the march of improvement because there cannot be any improvement to the country in any form without being a benefit to the common carrier. They get the first benefit, namely, the freight, their passenger traffics, and, as lands are drained, plowed, and redeemed, railroad stock in that territory advances. By the construction of drainage district No. 34, not only the right of way was relieved of the water, but appellants received a direct benefit by the drainage of every acre of land in the district. True, appellant might well urge that landowners bordering on the district to be benefited by the drainage of the lands adjoining them are benefited, but I wish to urge that their benefit is slight compared with the benefit that the railroad company receives by having a territory redeemed and a part of it that has heretofore been useless brought into use; the products therefrom being hauled by carriers for hire.

If a better argument were available, we are sure that the alert counsel for appellee would have put it forward. We think there is no fair escape from the conclusion that the assessment against the railway company was disproportionate in amount. This conclusion is emphasized somewhat by the fact that the company incurred an expense of $150 in constructing the two crosscuts under its track, as already indicated, and that it will be necessary that the drain be extended another four

hundred feet to connect with its outlet in the borrow pit in order to give to it the full benefit of the improvement. This would entail an additional cost of $175 at the same rate of cost of construction as was charged against it for the one thousand feet. It is our conclusion, therefore, that the amount of the assessment should be reduced to the sum of $400, and the order of the district court is modified accordingly.

*Modified* and *Affirmed.*

LADD, C. J., and WEAVER and PRESTON, JJ., concur