CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellant,
v. BOARD OF SUPERVISORS OF HAMILTON COUNTY et al.,
Appellees.

**DRAINS:** Establishment—Notice and Hearing—Constitutional
1 Power to Dispense With—Effect. A public drainage improvement district may, in view of its legislative character, be constitutionally established *without any notice to the property owner, and without according him any hearing.* It follows that, when the legislature has, voluntarily and as a matter of grace, provided for such notice and hearing, the courts will not assume to pass upon the statutory sufficiency thereof. (Const., Sec. 18, Art. I, as amended; Sec. 1989-a3, Code Supp., 1913.)

**DRAINS:** Establishment—Fundamental Source of Power. Fundamentally, the power to establish drainage improvement districts, and to assess the cost thereof on benefited land, rests on the *power to tax*, though involving, incidentally, the police power, and the power of eminent domain, in so far as land is actually taken.

**DRAINS:** Establishment—Hearing Before Engineer. A property
3 owner has no constitutional right to a hearing before the engineer appointed to make the preliminary report on a proposed drainage improvement district, on the question whether his land should be included in the district, because:
   1. The engineer does not establish the district, and
   2. The legislature has ample power to establish such a district, or to authorize it to be done, without according the property owner *any* hearing.

**DRAINS:** Establishment—Failure to Appeal—Effect. Failure to appeal from an order of the board of supervisors establishing a

drainage district (*in so far as such appeal involves purely judicial questions*) forecloses the property owner's claim that his land ought not to be included within the district because not benefited by such inclusion. In other words, such claim of total non-benefit may not be raised against the validity of an assessment.

**DRAINS:** Assessments—Due Process. According due notice and hearing to each property owner at some stage of the proceeding upon the question as to the proper amount of an assessment, constitutes "due process." The property owner is, under our Drainage Act (Sec. 1989-a1 *et seq.*, Code Supp., 1913), fully accorded due process:

1. By notice, hearing, and appeal on the question of the *establishment of the district*, and

2. By notice, hearing and appeal on the question of the *amount of assessments*.

**DRAINS:** Establishment—Failure to Appeal—Effect.

**DRAINS:** Assessments—Inequitableness—Evidence—Insufficiency. Inequitable apportionment of assessment is not established by evidence that, out of about 160 different tracts, five tracts were, in comparison with complainant's lands, assessed low, in view of benefits received, when such benefits are contingent on additional drainage facilities' being provided in the way of tiling, and no estimate is made of the cost thereof. And this is especially true when complainant is making his comparisons on the basis of total non-benefit to his own land—a question foreclosed against him by the act of establishing the district.

**DRAINS:** Assessments—Presumption of Equitableness. A strong presumption of equitableness attends an assessment of benefits, especially one which has been confirmed by both the board of supervisors and the lower court.

**DRAINS:** Assessments—Non-Immediate Enhancement of Market Value. Principle recognized that benefits for which assessments may be imposed need not be such as to necessarily result in an immediate increase in market value of the land.

**DRAINS:** Assessments—Lands Already Drained by Nature. That portions of the land within the district are already drained by nature is a proper element to be considered in determining the amount of the assessment, but is not a basis for *invalidating* an assessment.

**DRAINS:** Assessments—Speculative Benefits. The theory that a railway company will acquire an increase of business by reason of the increased productiveness of lands throughout a drainage district, is entirely too speculative to form a basis for an assessment against the railway which traverses the district.

*Appeal from Hamilton District Court.*—C. E. ALBROOK, Judge.

MAY 5, 1916.

OPINION REFILED AFTER WITHDRAWAL BY COURT, MAY 22, 1917.

SUPPLEMENTAL OPINION ON REHEARING, DECEMBER 18, 1917.

THE right of way and other lands owned by plaintiff within the above-named district were assessed with a part of the cost of constructing the drainage system, and it appealed to the district court from the assessment so made. On a hearing of the evidence, the court confirmed assessment as levied by the board of supervisors, and plaintiff again appeals.— *Affirmed.*

*J. L. Kamrar, J. C. Davis* and *George E. Hise,* for appellant.

*D. C. Chase* and *J. M. Blake,* for appellees.

WEAVER, J.—The district is made up of farm lands and part of the town of Kamrar, and includes a total area of about 2,200 acres, through the east part of which runs appellant's right of way, for a distance of about 1⅝ miles. The right of way proper is 100 feet wide. The station grounds are 2,000 feet in length, and, according to the scale of the plat submitted by appellant, are 300 feet wide, or, as stated by counsel, 260 feet. In its natural condition, the land, while not hilly, is uneven, alternating frequently between dry elevations and tracts of wet or swampy character, the whole constituting an area to receive material benefit by drainage. The proceedings for organizing the drainage district were initiated under Chapter 2-A

of Title 10, Code Supplement, 1913, and no question is raised in argument against the regularity of the proceedings, if the statute referred to is held to be constitutional. Upon petition of landholders for such improvement, the board of supervisors appointed an engineer, who examined the lands described in the petition and other lands which would be benefited by the improvement, and made report of his findings, as provided by the statute, recommending the establishment of the district substantially as prayed for. The plan so reported appearing to the board of supervisors to be expedient and desirable, it ordered the county auditor to give notice to all the landowners within the proposed district of the pendency and prayer of the petition, of the favorable report of the engineer thereon, and of the day for the hearing upon said report; also, that all claims for damages should be filed in proper time before said day of hearing. At the time so appointed, the appellant, by its attorney, appeared before the board of supervisors, and filed written objections to the establishment of the district, denying that such improvement would be of any public utility, or would promote public health, convenience, or welfare, or be of any benefit whatever to the railway company or its property, and alleging that the cost would be oppressive, and out of proportion to the benefits to be derived therefrom. It was also objected that the statute under which it was proposed to establish the district and construct the improvement is unconstitutional and void, in that it operates to deprive the appellant of its property, or to subject its property to a heavy burden, without due process of law and without compensation, and denies to appellant the equal protection of the law, contrary to various specified provisions of the Constitution of Iowa and the Constitution of the United States. Upon consideration of these objections, the board of supervisors overruled them, and ordered the establishment of the district as recommended by the engineer. From

this order establishing the district, the appellant did not appeal. Thereafter, the contract for the work was let and performed; and the commission appointed to assess the benefits derived from the improvement and to assess the cost thereof against the land, made its report. Notice of hearing upon such report was then given, as provided by law, to all the owners of property so charged, naming the day when the matter would come on for hearing. On the day so named, the appellant again appeared, and, objecting to the assessment laid upon its property, alleged that the board of supervisors had no jurisdiction of the matter, and was without lawful authority to levy such assessment, and that the amount so assessed upon its property was excessive, unfair, and discriminatory. It also again pleaded at much length the unconstitutionality of the drainage statute, upon grounds to which we shall more particularly refer in the further progress of this discussion. The board overruled these objections, and affirmed the assessment made upon the railway property as reported by the commission. From that order, the railway company in due time appealed to the district court, where it filed a petition again setting forth its objections to the assessment, and asking that it be vacated and set aside; and, in event that such prayer be denied, demanded that its tax be reduced to an equitable amount, and in proportion to the benefits received therefrom. Upon trial to the court, the assessment was ordered confirmed as made, and appellant now brings the case to this court for review.

I. In printed brief and argument, counsel for appellant have given most prominence to their objections to the constitutional validity of the Drainage Act. These objections cover a somewhat wide range of statement, but in last analysis, they may be comprehended in the proposition that the act makes no

1. DRAINS: establishment: notice and hearing: constitutional power to dispense with: effect.

proper provision for notice to the landowner of the proposed inclusion of his property in the district, or for any hearing of his objections thereto, with the result that he is thereby deprived of his property, or a burdensome tax is laid upon it, without due process of law.

If the assumed premises be correct, then the objection is sound; for, under our system of government, a person may not be deprived of the benefits of due process of law for the protection of his personal and property rights. The question presented is not a new one, but we think it clearly, demonstrable that the argument in support of the objections misapprehends the force and effect of the statute, as well as of our previous decisions thereon.

The proceeding by which the state undertakes the establishment of a drainage district, or to authorize a board of supervisors or other local tribunal to create such district and to assess the cost of the improvement upon the lands of such district, is an exercise of the taxing power (and possibly, to a certain extent, of the police power), and not the power of eminent domain, except as to the property actually taken or appropriated for the ditches.   Bearing this in mind, the subject is freed from much of its apparent difficulty.  *Hedge v. Des Moines,* 141 Iowa 4, 22; *Denny v. Des Moines County,* 143 Iowa 466; *Chicago, M. & St. P. R. Co. v. Monona County,* 144 Iowa 171; *Ross v. Board of Supervisors of Wright County,* 128 Iowa 427; *People v. Mayor of Brooklyn,* 4 N. Y. 421; *Mc-Comb v. Bell,* 2 Minn. 295; *Weeks v. City of Milwaukee,* 10 Wis. 242; *Rogers v. City of St. Paul,* 22 Minn. 494; Cooley on Taxation (2d Ed.), 149; 25 Am. & Eng. Encyc. of Law (2d Ed.), 1169.   And, in so far as a statute involves an exercise of legislative discretion, there is no constitutional requirement that notice is essential to its validity.   If, however, legislative authority is delegated

*Marginal note:* 2. DRAINS: establishment: fundamental source of power.

by the state to some inferior body, with a restriction by which it is to be used only upon notice to persons whose interests are thereby affected, then, of course, compliance therewith is a condition precedent to its lawful exercise. That condition being complied with, the legislative act, within the limits of the delegated power, is not open to revision or control by the courts. Says the court, in the *St. Paul* case, supra:

"As respects taxation the authority of the legislature is limited only by the constitution and the nature of taxation itself. It was therefore competent for the legislature to give this final and conclusive effect to the determination of the common council, that is to say, it was competent for the legislature to enact that their determination as a part of the machinery of taxation should be final and conclusive as respected the question whether a proposed local improvement was of such character that the amount of taxes necessary to be raised for the expense of making it would exceed the special benefits."

In *Spencer v. Merchant,* 125 U. S. 345, the Supreme Court of the United States lays down the rule as follows:

"The legislature, in the exercise of its power of taxation, has the right to direct the whole or a part of the expense of a public improvement, * * * to be assessed upon the owners of lands benefited thereby; and the determination of the territorial district * * * is within the province of legislative discretion (citing *Willard v. Presbury,* 14 Wall. (U. S.) 676; *Davidson v. New Orleans,* 96 U. S. 97; *Mobile County v. Kimball,* 102 U. S. 691; *Hagar v. Reclamation District,* 111 U. S. 701)."

To the same effect, see *Nottage v. City of Portland,* 35 Ore. 554; *Wilson v. City of Salem,* 24 Ore. 508; *Williams v. Eggleston,* 170 U. S. 304, 311. In the last cited case, it is said:

"Neither can it be doubted that, if the state constitu-

tion does not prohibit, the legislature, speaking generally, may create a new taxing district, determine what territory shall belong to such district and what property shall be considered as benefited by a proposed improvement.  And in so doing it is not compelled to give notice to the parties resident within the territory or permit a hearing before itself, one of its committees, or any other tribunal, as to the question whether the property so included within the taxing district is in fact benefited."

Indeed, the authorities to this effect are almost without limit, and all to the same force and effect.  But the fact that the statute which we are now considering does provide for notice makes the question of the limit of legislative power to act without notice an academic one, except as it affects the complaint made by the appellant that the notice so required is insufficient.  Assuming, as we must, that the legislature could have provided for the establishment of the district without any notice, it is not within the province of the court to say that some further or other notice is essential to the validity of the proceeding.  Now this statute provides, not only for notice of the proceedings for establishment of the district, and for an appeal therefrom by any person aggrieved thereby, but it also provides for still another notice of the levy of the assessment for the expense so incurred, upon the property within the district, and for an appeal therefrom by any property owner for the correction of an excessive assessment.

3. DRAINS: establishment: hearing before engineer.

The appellant's contention that it is the engineer, rather than the board of supervisors, who is charged with the duty of laying out and creating the district, and that the property owner should, therefore, be entitled to a hearing before him, is, we think, without merit.  Even if counsel were right with reference to the authority of the engineer, it would still be true, as we have shown, that no notice was

essential to the validity of his act; but the objection is grounded upon a misconception of the functions of the engineer. In no sense of the word does he create or establish the district. The proceeding is initiated by a petition of property owners, addressed to the supervisors; and, as a mere preliminary to its consideration, the board sends out the engineer to make a tentative examination of the proposed district and make a report, upon return of which, if the scheme is condemned, the petition may be dismissed, or, if approved, further steps may be taken for a final hearing upon the question of establishing the district. The very first step in that direction is the service of notice. Until that time, no notice is necessary. No man's property is put in jeopardy of injury or even of taxation. The engineer does not and cannot establish the district. It is true, we have held that the board cannot establish any district without a favorable report by the engineer; but it is none the less true that the board, and the board alone, passes upon the question of its establishment. Although the engineer reports favorably, the board may refuse to establish the district, and may dismiss the proceedings; it may accept the report and order the establishment; or it may refer the matter back to the engineer for further examination and report. The authority of the engineer is that of an agency through which the board is to ascertain certain facts which are essential to intelligent action upon the petition of the landowners, and whether the petition is granted or denied is not left to his discretion. The first notice apprises the property owner of the proposition to create the drainage district, and of the day upon which the matter will come up for hearing before the board; and, while the statute does not say, in so many words, that the person notified may then appear and show cause, if any he has, against the prayer of the petition, such is, nevertheless, the clear purpose and intent of the provision for such notice. Such has

been the practical construction of the statute by this and other courts of the state, and by boards of supervisors, as well as by parties desiring to contest the proposed improvement. Such, indeed, was the interpretation and understanding of appellant itself; for it did appear in response to the notice, made its objections, and had a hearing thereon.

The issues thus presented were decided

4. DRAINS: establishment: failure to appeal: effect.  against it by the board, and, though having a right to appeal, appellant did not exercise it. This, under well-settled rules, forecloses further insistence that the district was made to include lands which should have been omitted. In *Lyon v. Sac County,* 155 Iowa 367, we said that the finding of the board establishing the district necessarily involved a determination that the land was of the character essential to authorize the improvement. Again, in *Kelley v. Drainage District,* 158 Iowa 735, we expressly held to the rule that the only remedy of a landowner served with notice and objecting to the inclusion of his land within the district "is by appeal to the district court, and a failure to avail himself of that remedy is a waiver of all others." In the same case, we further said that, in establishing the district, the "supervisors necessarily found that such lands would be benefited by the improvement, and the matter *will not be reconsidered in levying the assessments."* In *Oliver v. Monona County,* 117 Iowa 56, we held that the objection to the district must be made when the matter of its establishment comes before the board for its action, and that such objection cannot be raised in contesting an assessment for benefits. Still again, in *Zinzer v. Board of Supervisors,* 137 Iowa 660, we said:

"The law contemplates the establishment of the district as returned by the engineer, save as changed by the board of supervisors upon the protest of some landowner

that his land has been improperly included within the proposed district or that lands of others have been improperly excluded. And where there is no appeal therefrom, the order of the board of supervisors, based thereon, establishing the district, is conclusive that all the lands included therein will be benefited by the improvement."

Still other holdings are to the same effect; but we have cited enough to show that the law in this respect is thoroughly settled and must be respected; if we are not to involve the drainage statute and its operation in inextricable confusion.

Counsel for appellant suggest that there is serious conflict in some of our decisions upon the law governing drainage operations in this state. This branch of our statute law has, within the last few years, rapidly developed into great importance; and its proper construction, complicated as it has been by frequent changes and amendments, has frequently occupied the attention of our courts. It would be strange if, in the multitude of cases dealing with the subject from various angles of approach, there should not be found instances of inharmonious expressions in argument and discussion; but we think that, when the cases are examined with a view to ascertaining the very questions considered and decided, there will be found little, if any, lack of harmony in them. The proposition that the creation and organization of a drainage improvement district is a legislative function, has long been recognized and often declared. See *Lyon v. Sac County,* 155 Iowa 367; *Kelley v. Drainage Dist.,* 158 Iowa 735; *Oliver v. Monona County,* 117 Iowa 56; *Zinser v. Board of Supervisors,* 137 Iowa 660; *Temple v. Hamilton County,* 134 Iowa 710; *Denny v. Des Moines County,* 143 Iowa 466; *Hartshorn v. Wright County Dist. Court,* 142 Iowa 72; *In re Drainage Dist. No. 3, Hardin County,* 146 Iowa 564; *Chicago, M. & St. P. R. Co. v. Monona County,* 144 Iowa 176, and others of this

class. Such, also, is the holding of the courts of other states, substantially without exception. The fact that the legislature has provided for an appeal to the district court from the order of establishment, has led to some confusion in discussion; because, strictly speaking, the legislature could not impose legislative functions on the court in this manner. We have met this difficulty by recognizing that, while vesting the board of supervisors with legislative power in this respect, it has coupled with that function certain other powers of a judicial nature, and that an appeal from the order establishing the district brings up for review by the courts only such orders of the board as may fairly come within the latter description. It is to be noted, also, that the right of appeal (see Section 1989-a6, Code Supplement, 1913), is given to the individual party or landowner who may be aggrieved by the establishment of the district; and, broadly speaking, the only grievance any such person can have is the inclusion of his own property in such district. If, for any sufficient reason, his property ought not to be so included, he may raise his objection before the board, and if overruled, may appeal to the court; but if he fails to avail himself of this remedy, he cannot be heard to raise the same objection to the validity of the special assessment thereafter levied for the improvement.

The case of *Denny v. Des Moines County,* 143 Iowa 466, presented the single question whether the action of a board of supervisors in rejecting a petition for a drainage district and refusing to order its establishment could be reviewed on appeal to the court; and this was decided in the negative, because the determination of whether conditions warranted the making of the improvement and establishment of the district was a legislative act, and not within the power of the court to make or enforce. The writer of the opinion *In re Drainage District No. 3, Hardin County,* 146 Iowa 564, makes use of some language which

may be construed as suggesting that the right of appeal from the assessment effects, in substance, the same result as might be obtained by an appeal from the establishment of the district, and intimation of the same kind may be found in one or two other cases; but they are more or less random expressions, not necessary to a decision of the questions there being considered and decided. It is because the landowner is given the opportunity to be heard to object to the inclusion of his land in the district, and the right of appeal therefrom, that the statute afterward provides that this question shall not be re-opened in appeals from the assessment. There is no essential inconsistency in our cases, and the conclusions reached in this opinion are the necessary and unavoidable result of the legislative character of the creation and establishment of the district.

The sufficiency of notice, and of opportunity of the property owner to be heard, to 5. DRAINS: assessments: due process. constitute due process of law, is a question that has had the attention of every court of the country; and if any one thing concerning the law of taxation can be said to be settled beyond doubt, it is that, "if provision is made for notice to and hearing of each proprietor, at some stage of the proceedings, upon the question what proportion of the tax shall be assessed upon his land, there is no taking of his property without due process of law." *Paulsen v. Portland*, 149 U. S. 30. And this rule is held applicable where no notice is provided for to the property owner of the establishment of the district, but where notice and opportunity to be heard are given at some subsequent stage of the proceedings, before the assessment is finally levied. *Voigt v. City of Detroit*, 123 Mich. 547. The precedents supporting this conclusion are too numerous and familiar to justify attempt at citation. There may be early cases in some of the courts which would justify doubt on the proposition; but if such was the fact,

the doubt has long since been dissipated.   Except as a right
of appeal from the order of establishment is given by our
statute, such order, made as required by statute, is con-
clusive upon the property owner.   *State ex rel. Baltzell v.
Stewart,* 74 Wis. 620; *Teegarden v. City of Racine,* 56 Wis.
545; *Dickson v. City of Racine,* 61 Wis. 545.   Says Mr.
Cooley:

"The whole subject of taxing districts belongs to the
legislature; so much is unquestionable.   The authority
may be exercised directly, or, in the case of local taxes, it
may be left to local boards or bodies; but in the latter case,
the determination will be by a body possessing for the pur-
pose legislative power, and whose action must be as con-
clusive as if taken by the legislature itself."   Cooley on
Taxation (1st Ed.) 449.

That our drainage statute invests the board of super-
visors with dual powers, both legislative and judicial in
character, has been often recognized by this court.   *Tem-
ple v. Hamilton County,* 134 Iowa 706.   In a later case, we
had occasion to consider this feature, and to construe the
statute giving a right of appeal from an order establishing
a drainage district, and held, after a very thorough review
of the authorities, that the right of appeal must be said to
apply only where the order excepted to was judicial in char-
acter,—such, for example, as the sufficiency of the petition
or of the statutory notice,—and that an order of establish-
ment, being referable only to the legislature authority of
the board, is not appealable.   *Denny v. Des Moines County,*
143 Iowa 471.   Indeed, no other holding is constitutionally
possible; for a statute conferring upon the court power or
authority to review or set aside a legislative act (except
upon constitutional grounds) would be manifestly void.
This was re-affirmed in *In re Drainage District No. 3, Hardin
County,* 146 Iowa 564, and in *Chicago, M. & St. P. R. Co. v.
Monona County,* 144 Iowa 171.   The writer of this opinion

registered a dissent in the *Denny* case; but a review thereof, in the light of the authorities and upon principle, convinces him that the opinion correctly states the law. In the *Zinser* case, supra, the board rejected the petition of the property owners, and refused to establish the district; and on appeal, the district court assumed to reverse the action of the board. On appeal to this court, we reversed the order below, and affirmed the action of the board. This was before we had, in the *Denny* and other cases, passed upon the constitutional question; but the same end was reached by holding that the board did not abuse its discretion in rejecting the petition. A review of all our cases will disclose none where we have assumed to judicially establish or to direct the establishment of a drainage district contrary to the finding or order of the board of supervisors, to which that function has been given by the legislature. It may be true that, in discussing other collateral questions, the authority of the court on appeal to review upon its merits an order of the board establishing a district has apparently been taken for granted; but, if so, it is either clearly dictum or the question has not been contested by counsel. The case of *Teegarden v. City of Racine*, 56 Wis. 545, involves a question quite similar to the one decided by us in the *Denny* case. The Wisconsin statute had provided in general terms for a right of appeal in proceedings for taxing the cost of a local improvement upon the property benefited thereby, and it was held that, upon such appeal, the fixing of the bounds of the taxing district could not be reviewed, and that the inquiry would be limited to the proper proportion of the whole assessment which each tract or lot should bear.

The statute applicable to this case will be found in Chapter 2-A, Title 10, Code Supplement, 1913. It is too long to quote in this opinion; but it is enough to say, in general terms, that it treats of the subject of drainage, and

prescribes the procedure by which the board of super-
visors may establish drainage districts, provide for their
improvement, and tax the costs thereof by special assess-
ment upon the district so improved.  This authority is
expressly vested in the legislature, with authority to dele-
gate it to appropriate local boards or tribunals.  See
Amendment to Section 18 of Article 1 of Constitution of
Iowa.  Due process of law is secured by statutory pro-
vision for service of notice and hearing at two different
stages in the proceedings before the tax can be legally lev-
ied, and a guard against the abuse of the power is further
afforded by a right of appeal in each instance.  It is,
therefore, too plain for reasonable doubt that, in the es-
tablishment of this particular district, the appellant was
denied no constitutional right or privilege.

What we have said is applicable also to
6. DRAINS: es-    the further proposition of appellant that
tablishment:
failure to ap-    its constitutional rights are infringed by
peal: effect.
Section 1989-a12, Code Supplement, 1913,
which provides that, in contesting an assessment, it shall
not be competent for the owner to show that his property
has received no benefit from the improvement.  At first
blush, the objection appears plausible, until we recall, what
has already been pointed out, that the statute expressly pro-
vides an opportunity to raise that objection before the dis-
trict is established.  The appellant was given that opportun-
ity.  It did appear, and resisted the inclusion of its property
in the district.  Its objection was overruled, and the district
was established as prayed for in the petition.  Appellant had
twenty days in which to appeal therefrom.  It did not appeal,
and the order of establishment became final; and from the
declaration that it is incompetent for the owner under such
circumstances to re-open that question in resistance to an
assessment, he suffers no wrong.  Indeed, had this clause
been entirely omitted from the statute, the same result

would have to follow, upon the elementary principle that a question or issue, having once been decided or disposed of by a duly authorized tribunal, is not open to further question, except upon some direct proceeding for its correction or reversal.

It will clarify the situation in this respect if we keep in mind the fact that it is the district, and not the individual landowner, with which the drainage law is primarily concerned. It maps out the district and treats it as a whole. In establishing the district, it establishes the fact that it is benefited as a whole, to the extent of the necessary and proper cost of the whole improvement. Practically speaking, there is then left but one further question to be passed upon, and that is the proper apportionment of this district tax to the several tracts of land of which the district is composed. If, in so doing, it were permissible for every individual owner to come into court and show that his particular tract received no benefit from the improvement, and be thereby relieved from liability to pay part of the tax, the law would be robbed of all practical effectiveness, and the whole system of drainage as a public enterprise be paralyzed.

Whether any sufficient evidence of inequitable apportionment is shown by the record will be considered in the following paragraph of this opinion.

II.   To sustain its complaint as to the

7. DRAINS: assessments: inequitableness: evidence: insufficiency.

apportionment of the tax, the appellant offered the testimony of three engineers, who identify certain plats of the right of way, describe the general topography of the territory through which it passes, the condition of the railway property and the improvements thereon, and express the opinion that the drainage does not to any material degree add to the value or convenience of the use of the right of way for railway purposes. Three other witnesses, now or formerly

roadmasters in appellant's service, and another who is its section foreman, and another its trainmaster, all unite in expressing a similar opinion. Appellant also introduced three farmers who testify to the increased value occasioned by the improvement to five certain designated 40-acre tracts in the district, saying, in effect, that these tracts were increased in value to the amount of $100 or $125 per acre, while it is claimed that the assessment levied thereon does not exceed about $50 per acre. However, each of these witnesses qualifies his estimate with an expression to the effect that it is based on the assumption that the improvement "will thoroughly drain the land," or "that it will drain the 40 out," or other words of the same purport. In other words, the estimate of increased value seems to have been of what it will appear to be when the system is completed by such laterals or tiling as each owner may find necessary, to effect the complete drainage of the particular tracts mentioned. One or two witnesses speak of the value of the improvement to the "Wilson farm of 120 acres," but there is no such description in the assessment list. The only identification of such land is in the testimony of one witness who speaks of it as being in Sections 27 and 34. If this means (as we think probable) the land listed in the name of one Bonner, it is included in the same five 40-acre tracts already mentioned; but if otherwise, then the description is too indefinite to be of any aid in disposing of the appeal. No estimate is made by anyone as to what it will cost the several landowners to tile their lands and connect them with the drainage afforded by the mains constructed by the district. Now, when we consider that the entire list shows assessments on parts of no less than 75 different 40-acre tracts, 80 platted lots, and 3 road districts, such assessments varying all the way from $4.00 to $2,000, it becomes plain that it would be the merest guesswork for the court to attempt any readjustment of the levy

upon no other or better evidence than the estimate of wit-
nesses as to the enchanced value of five small tracts, selected
from more than 150 into which the district is divided. And
this conclusion is emphasized when we remember that even
that estimate is so qualified in its statement as to deprive
it of material weight, and further remember that the tes-
timony that the railroad property received no benefit from
the improvement is wholly incompetent, under the statute,
to exempt the property from assessment, but may be con-
sidered for what it is worth in determining the equitable
distribution of the burden. True, counsel take the list and
map, and point out other tracts on which the benefits are
assessed at from $7 to $44 per acre, and then assert that the
"undisputed evidence" shows that all these lands have been
enhanced in value from a value of from $15 to $40 per
acre before the improvement, to $100 or even $200 per acre
after the improvement; but again we have to say that the
statement so made is based upon an entire misapprehen-
sion of the record,—for, aside from the assessment list
itself, there is an absolute lack of evidence showing the
effect of the improvement upon the value of any of the
lands except the five 40-acre tracts above mentioned,—and
that this testimony, as qualified by the witnesses themselves,
is not only inconclusive as to the particular tracts of
which they speak, but has no application, direct or indi-
rect, to the great bulk of the district concerning which they
do not speak at all.

8. DRAINS: as-
sessments:
presumption
of equitable-
ness.

As the record stands, then, it is prac-
tically devoid of anything tending to over-
come the presumption that the assessing
officers did their duty, and that the list made
and returned by them is correct. As we have had occasion
to say in some of the cases above cited, the assessments
having been made by the officers named for that purpose,
acting under their official oaths and in obedience to the stat-

ute providing therefor, the presumption of their substantial correctness can be overcome only by a very clear showing of prejudicial error, or of fraud or mistake. We are to presume, also, that, in making such assessments, they took into consideration not only the matters concerning which evidence was given upon trial of the appeal to the district court, but all other elements

9. DRAINS: assessments: non-immediate enhancement of market value.

mentioned by the statute as a basis for estimating benefits. Such assessments are not to be avoided by showing, for example, no more than that the improvement did not render the land any better or more convenient for the present use to which it is put by the owner; for, even if that be proved, it does not negative the accrual of benefits by reason of other matters of which the statute takes cognizance, —such, for instance, as public utility, convenience, and welfare,—peculiar to the district or affecting the property assessed, as well as the possibility of the future employment of such property in any valuable use to which it is reasonably adapted. Benefits, as we have before had occasion to say, include more than immediate enhancement of market value. *Chicago, R. I. & P. R. Co. v. City of Centerville*, 172 Iowa 444. Says the Supreme Court of the United States:

"The foundation of this familiar form of taxation is a question of theory. The amount of benefit which an improvement will confer upon particular land, indeed whether it is a benefit at all, is a matter of forecast and estimate." *Louisville & N. R. Co. v. Barber Asphalt Paving Co.*, 197 U. S. 430.

So the Massachusetts court, dealing with the same subject, says it is "the potentiality of receiving a benefit which was the thing to be taxed." *Wright v. Boston*, 9 Cush. (Mass.) 233. See also *Bell v. City of Burlington*, 154 Iowa 607. It may be admitted that, in dealing with a railroad

right of way or other similar property, it is practically impossible for any assessing officer to analyze his estimate of values or benefits, and name a specific sum of money as representing the beneficial result of any one feature of the improvement; and this fact renders it a favorite topic for the purposes of cross-examination by counsel attacking such assessments.   But the advantage so gained is apparent only. The assessment of benefits in such cases is but one of the frequent occasions in the administration of justice where the jury, or other body charged with the duty of estimating values, is authorized to take into consideration all the facts and circumstances shown and make its own estimate, and the court will not overrule or interfere with it unless it be so plainly without foundation, or so extravagant, as to demonstrate that it has been dictated by ignorance, passion, or prejudice.   In discussing the general principles of local assessments for local improvements, the Massachusetts court reasons along the same lines, saying that, in some cases:

"It is very plain there is, and in the very nature of the case can be, no means of accurate measurement, no matter what tribunal has to deal with the subject. All that could be done by any tribunal would be to take into view all the various elements and considerations that might appear to have a just bearing upon the question, and determine as fairly as possible what is just and equitable under all the circumstances." *Kingman et al., Petitioners,* 153 Mass. 566.

There is no showing in this case upon which we would be justified in saying that the commissioners making the primary assessment, the board of supervisors in adopting it, and the district court in affirming it upon appeal, did not keep within the limit of their authority and discretion in supporting this tax.   There is nothing in the mere amount of the tax upon which we, as a matter of law, may condemn

it.   It has been said by the Illinois court, in such a case:

"We are not authorized to interfere with a finding of this nature unless we can say that it is palpably against the weight of the evidence, * * * This is true even in cases where, if governed wholly by the testimony as written in the record, we might feel better satisfied with a different conclusion."   *Topliff v. City of Chicago,* 196 Ill. 215 (63 N. E. 692).

Such also is the clear effect of our own cases.  *In re Hill Drainage District,* 162 Iowa 182; *Munn v. Board of Supervisors,* 161 Iowa 26, 35; *Chambliss v. Johnson,* 77 Iowa 611, 613; *Chicago, R. I. & P. R. Co. v. Wright County Drain. Dist.,* 175 Iowa 417; *Camp v. City of Davenport,* 151 Iowa 33.   It is true that, in a somewhat recent case, we did, under the peculiar circumstances there shown, reduce the amount of an assessment upon railroad property; but, even as reduced, it was permitted to stand for $400 for an improvement affecting at most about 1,000 feet of a railway company's right of way through land not excessively wet, a tax apparently more burdensome, as compared with the benefits shown, than the one we are now considering.  *In re Story County Drain. Dist. No. 34,* 166 Iowa 344.

Appellant further contends that, as the plat of the district discloses that at various points the right of way is laid over lands having an elevation from which surface water naturally drains into the lower levels or sloughs, and that a portion of the right of way at each end of the district has a natural slope or drainage away from the artificial system created by the district, this, in itself, is sufficient reason for reducing or setting aside the assessment. In so far as the objection goes to the propriety of including this territory in the district, it is governed by what we have already said concerning the finality of the ruling of the board in prescribing the district boundaries; and, in so far

10. DRAINS: assessments: lands already drained by nature.

as it affects the assessment of benefits or levy of the tax, we must presume that all these matters, so far as material, were duly considered by the commissioners, by the supervisors, and by the district court. Very few districts are ever organized in which are not found elevated points or areas which are dry, and which in themselves need no drainage, and in very many districts there may be found other points or areas from which the natural drainage is not in the direction of the projected district mains; but this fact alone has never been held a sufficient reason for invalidating the organization of the district, or for relieving the entire tract in which exceptional conditions are found from its proportional share of the district tax. The statute, Section 1989-a2, Code Supplement, 1913, expressly provides that where, in the judgment of the engineer, the conditions require it, the course of drainage need not be along the course of natural flow of surface waters. Like other tracts within the district, the right of way is to be viewed and assessed as a whole, and the benefits assessed are such as, in the judgment of the assessing officers, result when due allowance is made for all the existing conditions. There is nothing in the record to prove that this duty was not properly performed.

11. DRAINS: assessments: speculative benefits.    It is finally said that this appellant was taxed to the full limit of its benefits, while the agricultural lands were taxed in a much lower proportion, and that, under the rule applied in *Chicago & N. W. R. Co. v. Hamilton County*, 171 Iowa 741, the assessment cannot be sustained. As noted by us in the *Wright County* case, 175 Iowa 417, the assessment in the *Hamilton County* case had been reduced by the district court, and it came to us on the county's appeal, with the usual presumptions in its favor. Under the record thus made, it was also practically undisputed that the assessment upon the railway property was in excess of its

proper ratio, and we held that there was no apparent error in the reduction made therein by the trial court. Such is not the record here. We are not so much concerned in what may have been in the minds of the commissioners and supervisors, in estimating benefits and levying the tax, as we are in the question whether the result they reached is substantially correct; and, as it comes to us with a presumption of correctness in its favor, the final inquiry is whether the testimony offered on the trial below is sufficient to overcome that presumption, and compel us to interfere with the levy. As we have already said, no such showing is made. While the commissioners were closely cross-examined upon the considerations influencing their minds in performing this duty, only one of them, Mr. Austin, was asked, in direct terms, for his judgment upon the central proposition in the case, and he answered that the assessment made upon the right of way was "fair and equitable, as compared with other assessments in the district;" and we find nothing in the evidence which requires us to come to any other conclusion.

For the reasons stated, the judgment of the district court is—*Affirmed*.

GAYNOR, C. J., LADD, EVANS, PRESTON, SALINGER, and STEVENS, JJ., concur.

### SUPPLEMENTAL OPINION.

PER CURIAM.—The trial court, in disposing of the case below, said, in substance, that the effect of drainage such as is involved in this controversy was to increase the productiveness of the soil in the country tributary to the railway, and thereby tend to increase the business of such railway as a carrier, and that this was a material fact to be considered in the assessment of benefits. Of this language the appellant complains.

In affirming the judgment below, this court does not

necessarily affirm the argument or reasoning by which the trial court came to its conclusion, and the fact that we did not mention the same in our former opinion is not to be construed as an approval. But to avoid any misapprehension in that respect, we have to say that, while all the benefits resulting to defendant's property within the district from the drainage improvement of such district must necessarily be considered in making the assessment, other benefits, if any, resulting to the railway company or to its property because of the improved conditions of lands adjacent to the district, or because of any other resulting advantages which it enjoys in common with the general public, are too remote and intangible to be made a basis of levying assessments.

With the foregoing addendum to the opinion as filed, the petition for rehearing is—*Overruled.*

All the justices concur.