CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellee, v.
BOARD OF SUPERVISORS OF HAMILTON COUNTY et al.,
Appellants.

DRAINS: Assessment Based on Erroneous Assumption. An assess-
1    ment which is excessive, because based on the assumption that
the drain embraces laterals which, in fact, were never ordered
or constructed, will be duly corrected on appeal.

DRAINS: Assessment Against Railroad Right of Way. The dis-
2    tance of a railroad right of way from the main drain (there
being no laterals to assist the drainage of such right of way)
must be given due consideration in assessing benefits. Assess-
ment, in view of such distance, is reduced from $1,500 to $600.

DRAINS: Assessments—Crediting Value of Former Improvements—
3    Substantial Compliance. Where a new district embraces a for-
mer district because of the inadequacy of such former district,
the requirement that the commissioners of classifications and
benefits shall take into consideration the value of such old im-
provement in the construction of the new improvement, and
credit such value to the parties owning the old improvement, is
substantially complied with by correctly estimating the value of
the new improvement to the old district, and distributing the
estimate to the several tracts within the old district, as re-
classified and re-estimated. (Sec. 1989-a25, Code Supp., 1913.)

DRAINS: Establishment—Prior Defect in Proceedings—Effect on
4    Assessments. Irregularities in proceedings prior to the order
establishing a drainage district may not be raised on appeals
from orders levying assessments.

*Appeal from Hamilton District Court.*—E. M. McCALL,
Judge.

OCTOBER 18, 1918.

ON appeal from the assessment against plaintiff's right
of way, the district court reduced the amount from $1,500
to $1,000. Both parties appeal, that of defendants being
first perfected. *Affirmed* on defendants' appeal. *Modified
and affirmed* on plaintiff's appeal.

*J. M. Blake* and *D. C. Chase,* for appellants.

*James C. Davis, George Hise,* and *J. L. Kamrar,* for appellee.

LADD, J.—I.   Drainage District No. 166, of Hamilton County, was established in Independence Township, August 31, 1914.   It included the O'Connor Drainage District, or

Drainage District No. 30, in which the improvement appears to have been completed. In 1907, by excavating an open ditch from a point in a natural watercourse, 30 rods

1. DRAINS : assessment based on erroneous assumption.

south of the center of Section 14, northeasterly 41 rods, laying 16-inch tile 216 rods, 14-inch tile 272 rods, 12-inch tile 148 rods, and 10-inch tile 64 rods, Drainage District No. 30 contained 870 acres.   In addition to this, District No. 166 included 2,957 acres.   The latter contemplated the laying of a 36-inch tile from near the northwest corner of Section 21 in a southeasterly direction to a point in the SE¼ SW¼ Section 22, and then smaller tile northerly and northeasterly to the ditch in District No. 30, and in it to the bulkhead at the end of the tile of that district, and from there on by replacing 2,770 feet of 16-inch tile with 20-inch tile, laid more than a foot deeper than were the 16-inch tile; also, from the point in the SE¼ SW¼ Section 22 southeasterly, and then northeasterly to a point in the southeast 40 of Section 14.   We infer this much from a tracing on a blueprint attached to appellee's argument; but we do not vouch for its accuracy or completeness, for there is nothing in the abstracts before us indicating the location or length of the main, or the number, location, or length of the laterals.   The engineer estimates the cost of "the above improvement" at $38,390, of Lateral 1, at $15,940, of making changes in District No. 30, at $1,939, and of other expenses, at $5,600, or $61,869 altogether.   "A profile of the ditches, showing the grade of the flow line, of the size of the tile nec-

essary, the depth of the cuts," is said to accompany the re-
port; but, if so, it was not introduced in evidence, and pre-
cisely what the "improvement" included, is not disclosed.
On September 7, 1914, three commissioners were appointed,
to ascertain the benefits and apportion the expenses among
the several tracts of land in the district, and filed their re-
port on October 4th, following, apportioning the expenses of
the improvement at from $6 to $2,000 per 40 in the portion
of the district other than District No. 30, and apportion-
ing $4,160 against that district, $1,500 against the Chicago
& Northwestern Railway Company, $2,000 against Hamil-
ton County, for benefits to highways under its supervision,
and $1,000 against the township, for benefits to highways
under its supervision.   The railway company interposed ob-
jections.   The board of supervisors, after correcting several
assessments, including the raising of the amount apportioned
to District No. 30 to $4,260, approved of the report, and
ordered levies accordingly.   The railway company per-
fected its appeal to the district court.   There, on full hear-
ing, the assessment against it was reduced to $1,000.   The
defendants insist that this reduction was not warranted by
the evidence; while the railway company contends that it is
excessive still.   The blueprint referred to shows that the
tile drain is, in a general way, parallel with plaintiff's right
of way, and about 80 rods therefrom, on an average, and
that it passes through the right of way near the outlet.   The
right of way is 100 feet wide, and, for a distance of 14,200
feet, it is within the district.   Therein are 10 cuts and a
like number of fills; but the fills cover a distance of about
9,000 feet, and the cuts, little more than 5,000 feet.   The
evidence that the drainage of the cuts would not be aided
by the improvement was undisputed.   Nor was there any
evidence that benefit to the fills or right of way at the sides
of these elsewhere than at or near Bridges 234, 235, 236, and
238, would result from the drainage system.

The commissioners assumed, in estimating the benefits, that laterals would extend from the main drain through the right of way where three of these bridges were located, as would the main at Bridge No. 38.   Boudinot, who made the report on which the district was established, testified that of these, a 14-inch tile drain was to extend 1,800 feet from the main track of the right of way at Bridge 234, a 10-inch tile drain to extend 1,877 feet at Bridge 235, and an 8-inch tile drain to extend 2,000 feet at Bridge 236.   Counsel for the railroad company contend that these laterals were not included in the petition for the improvement, in the report of the engineer, or in the order of the board of supervisors. The record is somewhat confusing on this question.   It was not the function of the petition to designate any particular drains to be laid, and, even if it were, the petition does not purport so to do; and, after asking that a district be established, it prayed that the board of supervisors construct a ditch or ditches, drain or drains, as the law provided, said ditch or ditches, drain or drains, to begin at or near the southeast corner of Section 17, Independence Township, and run in a southeasterly direction to a point of the watercourse near the center of Section 27, thence in a northeasterly direction along the most practical route, and terminate at or near the northeast corner of Section 23, said township.   All suggested is the general course of the improvement, without including laterals.   An examination of the engineer's report shows that no such laterals were included therein.   All included was the main, extending from zero to Station 269, and one lateral, extending from zero to Station 156, and certain repairs of the O'Connor Drainage District improvement.   The engineer testified that this was the only report he had made, and that it was not subsequently amended.

Moreover, after counsel for the railroad company had insisted, in oral argument on petition for rehearing, that

these laterals had never been ordered by the board of su-
pervisors, or constructed, counsel representing the drainage
district was asked what he had to say concerning the con-
tention of counsel for the company, and responded that he
had nothing to say on that subject. Had these drains been
in existence, surely counsel would not have been adverse to
so assuring the court; and his omission to make a candid
response ought not to be construed otherwise than as a
tentative concession of the correctness of the assertion by
the company's attorneys. At any rate, we are persuaded,
on a full examination of the record, that these laterals were
not a part of the system of drainage proposed and carried
out. Even though the commissioners, in estimating the ben-
efits to the right of way of the railroad company, may have
assumed that the laterals mentioned had been ordered and
constructed, there is nothing to show that the board of
supervisors, on hearing before that body, made the same
mistake. On the other hand, nothing appears to the con-
trary. The evidence disclosed that, at
2. DRAINS: assess-
ment against
railroad right
of way.
Bridge 234, that farthest to the east, the
right of way was through a swampy area
of about 40 acres originally, but with only
about 1.4 acres continuously under the water. The distance
across it is about 950 feet. The embankment at the bottom
is 46 feet wide, and about 16 feet at the top. To maintain
the slope, a tie revetment had been constructed on each side
—ties driven in the ground at the bottom, and a row of
willows planted on the bank, 3 or 4 feet up. A box culvert,
3 feet by 3 feet, runs through the embankment. This had
been done 16 or 17 years prior to the trial, and the road was
constructed in 1881. The evidence tended to show that the
ties were decaying and getting out of place; that the wil-
lows rendered them useless thereafter; that a tile lateral,
as heretofore stated, if laid, would carry off all the surface
water; and that the embankment had so settled that drain-

age would be of no benefit to the company; and the like. At Bridge 235, there is a slough and considerable standing water. Through the embankment is a 36-inch pipe, 36 feet long. Bridge 236 is a box culvert, 3 feet by 3 feet, 30 feet long. Bridge 38 is a four-span pile bridge, 62 feet long. Under this passes the main tile, and it furnishes an outlet for a 12-inch tile previously there, and any other necessary to drain the right of way. On the other hand, it is said that the opening may not be reduced, as the volume of water, even with the tile in, may be as great as before the tile was laid, in some seasons; while, on the other hand, opinion is expressed that the volume of water at these places may be greatly reduced by use of catch basins; that a cement bridge might be constructed there to replace the pile bridge and render the crossing much less dangerous.

It will be observed that there. was no connection between the main drain and the three bridges mentioned; and, as the main tile was about 80 rods distant, the drainage of the right of way at these points would not be improved or changed by the improvement contemplated. In fact, the only benefit in the way of better drainage for the right of way would be that of having an outlet for the drainage of the water from these points in the right of way furnished by the main drain; but the value of this would seem to be much impaired by the circumstance that such drainage must be through the land of the intervening owners.

No useful purpose will be served by review and comparison of the evidence in detail. The right of way contained 32 acres, 1.4 acres of which was under the water throughout the year. Drainage is afforded directly by the main tile where it passes under Bridge 38 and in that vicinity; and, notwithstanding some testimony that even this would be of no benefit, we are satisfied that this tile will carry off the water more quickly that it otherwise would be taken, and effect some drainage of the right of way; and, notwith-

standing the testimony of some engineers that the drain-
age of a right of way is of no benefit to the company, that
they are mistaken, and that a right of way may be more eco-
nomically maintained and will be less dangerous when thor-
oughly drained than with water standing along the embank-
ments more or less continuously. It is always somewhat
difficult to ascertain benefits to a right of way likely to be
derived from such an improvement. Necessarily, in ascer-
taining such benefits, comparison must be made with ad-
vantages to land used for agricultural .purposes or public
highways. The public claim to the latter, like the rail-
road company's interest in its right of way, is merely a mat-
ter of easement, more or less permanent in its nature. Much
depends on the topography of the different tracts, and the
use to be made of them, and the burden to be borne by each,
estimated approximately and by comparison. We have done
so, and are of the opinion that, in view of the distance of the
main tile drain from the several portions of the right of
way requiring drainage, as compared with other lands and
with the highways, the amount assessed against the right
of way of the railroad company should be reduced to $600.
See Section 1989-a18 of the Code Supplement, 1913; *In re
Johnson Dr. Dist.*, 141 Iowa 380; *Chicago & N. W. R. Co. v.
Board of Supervisors*, 182 Iowa 60.

II. The railway company also contends that, inasmuch
as the assessment against District No. 30 by the commis-
sioners was *en masse*, in the sum of $4,260, without classifi-
cation or assessment of separate tracts, the
board of supervisors should not have re-
ceived the commissioners' report, and the
assessment against plaintiff should be can-
celed. One of the purposes in establishing
District No. 166 was to furnish District No. 30 with a better
outlet. This appears from the following excerpt from the
petition:

3. DRAINS: assess-
ments: credit-
ing value of
former im-
provements:
substantial com-
pliance.

.    "Note.—It is the intention of the petition also to take up and deepen and enlarge the tile of the O'Connor Drainage District, as far as is necessary to make said district practical; also, a lateral starting near the southeast corner of Section 21, and running in a northeasterly direction to the northeast ¼ corner of Section 22, thence in a north and easterly direction in the most practical route to the bulkhead at the O'Connor drain."

Indeed, the district was organized in pursuance of Section 1989-a25 of the Supplement to the Code, 1913, which provides that:

"If any levee, drainage district or improvement heretofore established, either by legal proceedings or by private parties, or which may hereafter be established, shall prove insufficient to protect or drain all of the lands necessarily tributary thereto, the board of supervisors, upon petition therefor as for the establishment of an original levee or drainage district, shall have the power and authority to establish a new levee or drainage district covering and including such old district or improvement, together with any additional lands deemed necessary; and whenever a new district shall be established as contemplated in this section and the new improvement shall extend into or along the former improvement, the commissioners of classification and benefits shall take into consideration the value of such old improvement in the construction of the new improvement and credit the same to the parties owning the old improvement as their interests may appear."

Instead of assessing the lands of the entire district together, the commissioners first ascertained the portion which should be paid by District No. 30 toward the improvement. Such portion would be the cost of relaying 2,770 feet of 20-inch tile instead of 16-inch tile, the difference in laying the main drain therefrom to the outlet as laid, and what it would have cost had the said 20-inch tile, so relaid, not been con-

nected with the main, and the appropriate share of the overhead expenses. There was no showing or claim but that the $4,260 was sufficient to cover these items; and, if so, District No. 30 was accorded its just portion of the burden incurred in making the improvement. The procedure, however, was not as prescribed by this statute, but it was equivalent thereto. Under the above section of the Code, the commissioners should have taken "into consideration the value of such old improvement in the construction of the new improvement and credited the same to the parties owning the old improvement as their interests may appear." The commissioners merely reversed this process, by estimating the value of the new improvement to the old district, and charging the same to the parties owning the old improvement. The method pursued, if the estimates and computations were accurate, cast on the lands in District No. 30 their just portion of the costs and expenses of the improvement contemplated in the organization of District No. 166; and this is precisely what must have happened had the statute above and Section 1989-a12 of the Code Supplement, 1913, been followed. The total amount of assessments levied and collected from the lands in District No. 30, then, are the same as though Section 1989-a25, Code Supplement, 1913, had been strictly pursued; and, this being so, the railway company was in no manner prejudiced, and ought not to be relieved of its portion of the burden, owing to the irregularity in making assessments. The case differs from *Wood v. Honey Creek Dr. Dist.*, 180 Iowa 159, in that there the commissioners omitted to classify benefits or apportion costs and expenses on 72 per cent of the lands of the district; while here all lands are classified according to benefits and assessed but in two areas, i. e., District 30 and the remainder of District 166.

Subsequently, the commissioners spread the $4,260 on the land in the O'Connor district by examining and classi-

fying all the land and apportioning the benefits precisely as was done with the remaining cost of the improvement on lands remaining in District No. 166.

In *Christenson v. Board of Supervisors*, 179 Iowa 745, the complainants were residents of the district against which a lump sum was assessed, and complained of this, and also of the apportionment according to the ratio adopted in the assessment of benefits in the original improvement therein. In these respects, the cases are distinguishable. The appellants in that case insisted that the facts were like those in this case, as to which it was remarked in that opinion that, if so, "we should look upon it with much favor."

As said, the result is not different, if estimates and computations are accurate, than it would have been, had the method prescribed by the sections of the Code Supplement been followed; and for this reason, plaintiff has no ground for complaint.

III. Counsel for plaintiff also contends that the drainage statutes are unconstitutional. This proposition was disposed of in *Chicago & N. W. R. Co. v. Board of Supervisors*, supra.

Some defects in proceedings prior to the order of the board of supervisors establishing the district are complained of, but these may not be considered in an appeal from the order of the board of supervisors fixing and levying assessments. *Kelley v. Drainage Dist.*, 158 Iowa 735; Section 1989-a46, Code Supplement, 1913.

4. DRAINS: establishment: prior defect in proceedings: effect on assessments.

Several points are first raised in the reply, and for that reason are not given attention. We are of the opinion that the assessment should be reduced to $600.

*Modified and affirmed* on appeal of plaintiff, and *affirmed* on appeal of defendants.

PRESTON, C. J., WEAVER, GAYNOR, and STEVENS, JJ., concur.