A. M. CHRISTENSON et al., Appellees, v. BOARD OF SUPERVISORS OF HAMILTON COUNTY, Appellants.

DRAINS: Assessment of Benefits—Lump Sum Assessments. Lump
1   sum assessments are not allowable; therefore, held that, where a newly created district embraced a former district, a levy of a lump sum on the lands of the former district to defray the cost of the new improvement, was a nullity. Section 1989-a12, Code Supplement, 1913.

DRAINS: Assessment of Benefits—Ratio of Benefits—When Not
2   Controlling in Subsequent Proceedings. The ratio of assessments adopted in the *original* construction of a drainage improvement

is by no means the ratio necessarily controlling in assessing the cost of a new improvement within a newly formed district embracing the former district. Therefore, where the newly created district embraced a former district, the levy of a lump sum for the new improvement on the lands within the old district, on the theory of apportioning said sum in the same ratio as was imposed on the property owners for the original improvement, was a nullity. Section 1989-a12, Code Supplement, 1913.

*Appeal from Hamilton District Court.*—H. E. Fry, Judge.

Tuesday, April 3, 1917.

Appeal in a drainage proceeding. In the district court, the respective plaintiffs were appellants from an order entered by the board of supervisors in a drainage proceeding. The two appeals were consolidated, and the trial court sustained the appeal of each plaintiff. From such order of the trial court, the defendants have appealed.—*Affirmed.*

*J. M. Blake* and *D. C. Chase*, for appellants.

*O. J. Henderson, Wesley Martin* and *R. G. Remley*, for appellees.

Evans, J.—The board of supervisors of Hamilton County established Drainage District Number 153, known in this record as the Anfinson District. This district was contiguous to a drainage district previously organized, known as the Bear Creek District Number 124. The new district was so organized that its outlet discharged its water toward and into the same creek which took the water of the Bear Creek district. The new district contemplated an outlet that was deeper than that of the old district. There is much confusion in the record of the board of supervisors as to whether Section 1 of the Bear Creek district was included as a part of District 153. Some portions of the record indicate its inclusion, and other portions indicate

1. Drains: assessment of benefits: lump sum assessments.

its omission. The appellants contend that it was appropriately included in the formation of the new district, and we shall so treat it for the purpose of this appeal. The outlet of the Bear Creek district is described as consisting of a bulkhead constructed at the foot of the tile drain upon the land of Mortvedt, and discharging into an open ditch extending into Long Dick Creek. The main line of the new district consisted of drain tile, laid at a greater depth than the outlet of the Bear Creek district. It crossed the line of water flow from the Bear Creek district a few hundred feet below the original outlet thereof. The outlet of the Bear Creek district was extended so as to connect with the main line of the new district and thus to form a Y. This was the sole connection of mutual interest between the lands in the Bear Creek district and the lands in the Anfinson district. The plaintiffs, appellees, are landowners in the Bear Creek district. It is contended for them that they obtained no benefit whatever from the change made in the outlet. It is further urged that the new outlet is not as effective as the old, because it is a submerged outlet, and the submergence thereof causes silt and mud to fill the outlet; whereas the former outlet in the bulkhead was a free outlet, and kept itself clean from deposits of silt. This question, however, is only incidental to the main controversy.

In making assessment of benefits, the board of supervisors, upon the report of the commissioners, fixed upon a lump sum of $700 to be assessed against the Bear Creek district. This order is assailed by the plaintiffs, on the ground, among others, that the board had no authority to assess a lump sum against the district as a whole. On the face of it, this contention would seem to be indisputable. It is said, however, for the board that the fixing of this lump sum was a mere step in the procedure or computation; that, pursuant thereto, it

2. DRAINS: assessment of benefits: ratio of benefits: when not controlling in subsequent proceedings.

was the intention of the board to distribute the fund and apportion to each 40-acre tract its proportionate share; that the appeal of the plaintiffs was premature, and that it was taken before the board had had an opportunity to finish its proceedings by distributing the burden of $700 among the landowners in proportion to the benefits. If this argument were sustained by the facts in the record, we should look upon it with much favor. We can readily see that, if the commissioners were charged with the duty of apportioning benefits to the landowners in the Bear Creek district, it would be a natural and reasonable step in the course of their estimates to fix upon the proportionate share of the cost of the new outlet which should be borne by the respective districts. Upon this record, however, the commissioners did not purport to apportion the $700 burden among the landowners of the Bear Creek district. It appears to have been taken for granted, both by them and by the board, that, the sum total for the district being thus determined, it must necessarily be apportioned among the landowners of that district in the same ratio as was adopted in the assessment of benefits of the original improvement therein. If this were necessarily the legal ratio, then it would be an idle form to send the commissioners out over the district to declare such ratio. It would be a mere question of mathematics, and could as well be computed in the office of the auditor as upon the fields of the landowners. But we find no authority under the statute for saying that the ratio fixed in the original assessment of benefits in the Bear Creek district would be necessarily controlling in the assessment of benefits for the Anfinson district as including the Bear Creek district. If the commissioners in this case had followed the directions of the statute, and had fixed the amount of benefit accruing to each landowner in the Bear Creek district by reason of the deepening and extending of the outlet, they might have found that the benefits of

such extension were not in the same ratio, as among the landowners, as the original benefits which accrued in the establishment of the district. The facts of this case are quite illustrative of the possibilities of such a situation. About five sevenths of the original cost of the improvement of Section 1 of the Bear Creek district was assessed against the plaintiff Braland. His lands, however, are farthest removed from the outlet. The original outlet was located upon the land of Mortvedt. This land was low. Mortvedt. received damages for the location of such outlet upon his land. His benefits, also, were regarded as comparatively small because of the low elevation and location of his land. The outlet being now extended and deepened by the new enterprise, the commissioners might have found that the benefits of such extension and deepening of the outlet were comparatively greater to Mortvedt than they were to Braland. Indeed, one of the commissioners testified on cross-examination as follows:

"I am not able to say that any obstruction at the outlet would hurt these appellants (plaintiffs). I didn't take into consideration the lands of the appellants (plaintiffs) in levying this assessment. They were so far back that it would be an adequate outlet anyway. The land nearer the outlet would receive the benefit first. It is quite true in my judgment that there is a difference in the benefit between those lands and the lands at the other end, but the assessment we made in a lump sum against the entire district. We didn't undertake to classify by forties."

The landowners were entitled to have this cost apportioned according to benefits. This could only be done by a consideration of the question first by the commissioners and then by the board of supervisors upon the report. We find nothing in the statute which would justify a departure in such a case from the general method of assessing benefits. We do not overlook Section 1989-a24, Code Supple-

ment, 1913. The proceedings involved herein were not had under that section. Indeed, under the undisputed facts in this case, no question of repair in the Bear Creek district was involved. There is no claim that the old outlet did not work efficiently. It is not claimed that there was any occasion for repair. On the contrary, this part of the Bear Creek district was included within the new District 153. Though it was done somewhat irregularly, it was in attempted compliance with the statute to that end. What the trial court held was that there was no power in the board to make a lump assessment against Section 1 of the Bear Creek district as a whole, and that its action in that respect was, therefore, invalid. We see no escape from this conclusion. The judgment of the district court is, therefore—*Affirmed.*

GAYNOR, C. J., LADD and SALINGER, JJ., concur.