Perry C. Loomis et al., Appellees, v. Board of Supervisors et al., Appellants.

DRAINS: Assessment of Benefits—Over-Assessment—Relief. Landowners in a drainage district who have been over-assessed are not bound, as a condition to relief on appeal, to point out how the deficiency created by reducing their assessment may be met.

DRAINS: Establishment and Maintenance—Extension of Districts—Harmless Error. Where proceedings for the establishment of two drainage districts were pending, and owners of lands not in said district had petitioned for an extension of the districts so as to include their lands, while it was irregular to order their establishment originally without passing upon the pending petition for extension, yet such irregularity was not fatal if,

from all the proceedings, it is possible to find a consistent result.

**DRAINS:** Assessment of Benefits—When Appeal Lies—Improper As-
3  sessment. Where a board of supervisors, in establishing a drain-
age district covering lands servient to two previously estab-
lished districts, adopted the commissioner's report recommend-
ing an apportionment of the costs to the said two districts, and
so apportioned the costs, the landowners in the third district
were not required to appeal from the action of the board in
adopting the commissioner's report, as they could only appeal
from an improper assessment against themselves; and their
appeal, made after such assessment, was timely.

**DRAINS:** Assessment of Benefits—Deficiency—Extended Outlet.
4  A deficiency assessment by reason of a reduction of the assess-
ment of certain landowners would not, where an extended or
deepened outlet was subsequently constructed, necessarily be
assessed against the landowners in the same proportions as the
original assessments, as the general benefit of the subsequently
extended and deepened outlet would not extend to the same
lands in the same proportion as the benefits did in the original
improvement.

**DRAINS:** Assessment of Benefits—Sufficiency of    Evidence. Evi-
5  dence reviewed, in a proceeding to establish a drainage dis-
trict, and *held* that an assessment against a landowner whose
lands were only partially redeemed by the improvement was
not excessive.

*Appeal from Wright District Court.*—H. E. FRY, Judge.
JULY 2, 1919.

IN the district court, this was an appeal from cer-
tain drainage assessments made by the board of supervi-
sors. Five appeals were consolidated and tried together,
and are involved herein. Upon trial in the district court,
partial relief was granted to the complainants. The board
of supervisors, on behalf of the district, appeal.—*Affirmed.*

*Birdsall, McGrath & Archerd,* for appellants.

*Berry & Hill* and *S. Flynn,* for appellees.

EVANS, J.—I. The questions presented herein involve
the relative rights and obligations of three contiguous drain-

age districts in Wright County. They are known in the record as Nos. 84, 85, and 90. These districts were all within the same watershed, and have the same outlet into the Iowa River. The general course of the waterflow is southeasterly. Nos. 84 and 85 were established simultaneously, on May 6, 1913. No. 85 lies south of No. 84. No. 90 lies southeast of No. 84 and east and south of No. 85. No. 84 comprises 1,396 acres; No. 85 comprises 564 acres; and No. 90 comprises 1,018 acres. The lands in both 84 and 85 are dominant to the lands in 90, and cast their water thereon over its natural waterways. While the proceedings for the establishment of 84 and 85 were pending, the owners of servient lands in 90 filed petitions in such proceedings, asking that the proposed Districts 84 and 85 be extended southwesterly to the river. Without rejecting these petitions, the board established Districts 84 and 85, as prayed. Later, after a favorable report by the commissioner, it granted the prayer of such petition by establishing No. 90 as an extension of 84 and 85. This order was made in September, 1914. In the meantime, the improvements had been already constructed in 84 and 85. As so constructed, the outlet in each district was a submerged one, the water being forced to the surface of the ground by pressure. The outlets of the two districts were entirely disconnected. The water of the two outlets, however, joined in the main watercourse farther down. The improvement as constructed in No. 90 started at the river as its outlet, and extended northwesterly up the main watercourse to the outlet of No. 84. From the main, a Y extended westerly to the outlet of No. 85. The point of junction of this Y with the main was about one mile down stream from the junction of the main with the outlet of No. 84. The following partial plat will show the method and places of junction with the main drain in No. 90.

The two junctions are indicated by X. The upper X indicates the outlet of the main drain in 84, and is on the east and west center line of Section 3. The lower X indicates the junction of the Y with the main drain of 90. The Y is extended westerly to connect with the outlet of No. 85.

This Y is a branch of the improvement in No. 90, and connects with the outlet of No. 85 by intersecting the same in the southeast quarter of the northwest quarter of Section 10, at the point A. The cost of the improvement in 84 was $8,800; that of 85 was $4,900; and that in 90 (exclusive of a certain lateral which does not figure in this case), was $21,700.

Though the elevation of the lands in 84 and 85 was high, as compared with the elevation of their own outlets, yet they contained much standing water in the form of ponds, some of these being very large.

The construction of the improvement in No. 90 gave 84 and 85 outlets six feet underground. In the proceedings pertaining to 90 and to the construction of its improvement, the board seems to have regarded it as a distinct entity from 84 and 85. The actual record, however, discloses that the commissioner appointed by the board recommended that the prayer of the petitioners be granted, and this report was adopted by the board. The record also shows that the only petitions before the board were for the extension of Districts 84 and 85 to an outlet at the river. The board and the commissioner, however, proceeded upon the theory that the cost of this extension must be borne by the lands included within 90, except that the commissioner recommended and the board ordered that $850 of the expense should be taxed to District 84, and $250 thereof to District 85. With this exception, the cost of the extension was apportioned to the property owners within District 90. From the assessments thus made against them, the five plaintiffs herein appealed. With one exception, no complaint is made of inequality in the assessments, as between the lands included in 90. The claim on the part of the appealing plaintiffs is that a greater sum should have been apportioned to the lands in 84 and 85 than the amounts already specified, and that, therefore,

the assessment of each landowner in 90 was correspondingly too high. The trial court sustained this contention, and reduced the assessment of each plaintiff by 20 per cent. The general line of argument for the defendant, as appellant, is that neither the board of supervisors nor the district court had any jurisdictional power over the lands in 84 and 85, because they were not parties to the proceeding; that, therefore, the board will be without power to assess the deficiency against such districts; that the only recourse left to the board under the decree of the district court is to re-assess the deficiency against the nonappealing landowners in District 90; that this would be a manifest injustice, in that it is conceded that they are already overassessed in precisely the same manner as the plaintiffs were overassessed.

We think it must be said at the outset that, if the complaining plaintiffs have, in fact, been overassessed, they are not bound, as a condition to relief, to point out a way whereby the deficiency created may be met.

**1. DRAINS: assessment of benefits: overassessment: relief.** However, upon the record before us, we think the point of want of jurisdiction is not well taken. The jurisdiction of the board to apportion $850 to 84 and $250 to 85 has not been challenged by anyone. If the board had jurisdiction to apportion $850, it had the same jurisdiction to apportion more. Broad powers are given by the statute to the board in the matter of including one

**2. DRAINS: establishment and maintenance: extension of districts: harmless error.** district in another, and in the matter of improving, enlarging, and extending outlets. It is quite true that no section of the drainage statute is strictly applicable to the case before us. This is so, however, because of irregularity in the procedure of establishment. The fundamental error of the appellants is the assumption that we are dealing with three entities. The three dis-

tricts are essentially one. There was no petition before the board for the establishment of 90, as such. The petition was for an *extension* of 84 and 85. The granting of this petition was to order the extension. Though 84 and 85 might be regarded as separate entities at the time of their establishment, the ordering of the extension of each by the same improvement necessarily united them. It was irregular to order their establishment originally without passing upon the pending petition for extension. This irregularity was not necessarily fatal if, from all the proceedings, a consistent result can be found. The only consistent result to be found is the essential unity of the three separately numbered districts.

It is strongly urged by the appellants that this question is foreclosed by the failure of the parties to appeal at the appropriate time from the order of the board adopting the report of the commissioner. It appears

3. DRAINS : assessment of benefits : when appeal lies : improper assessment.

that the report of the commissioner which recommended the granting of the petition of extension contained also an estimate, as required by statute, of the probable cost of the improvement. It also contained a recommendation that $850 of such costs be apportioned to District 84, and $250 to District 85. It is urged that it was incumbent upon the plaintiffs, if aggrieved, to appeal from the order of the board which adopted such report. It is to be noted first that the recommendation thus made by the commissioner was not made pursuant to any requirement of the statute. Nor did such recommendation present to the board any question upon which it could then pass. There was nothing hostile to them, involved in the order of the board, from which the plaintiffs could appeal. They could appeal only from an improper assessment against themselves. Their appeal from the assessment against themselves was timely.

. If we are correct in our conclusion that these three dis-

tricts were essentially one, the evidence shows quite clearly that larger amounts should have been apportioned to the lands in 84 and 85. And if this be so, then the plaintiffs are entitled to the relief granted, whatever the later difficulties may be in taking care of the deficiency created by the granting of such relief. We may say that we see no jurisdictional impediment to the proper distribution of this deficiency to the lands benefited in 84 and 85. If notice of proposed assessments has been omitted, it may yet be given. We do not think that such deficiency should necessarily be assessed in the same proportion as the original assessment in these districts, for the reason that the benefit of an extended and deepened outlet does not extend to the same lands in the same proportion as the benefit of the original improvement. As pointed out in *Christenson v. Board of Supervisors*, 179 Iowa 745, the land upon which a submerged or a surface outlet is situated gets little benefit from the original improvement; whereas it gets substantial benefit from an extension or deepening of such outlet.

4. DRAINS: assessment of benefits: deficiency: extended outlet.

On the question of what amount should properly have been apportioned to the dominant districts, approximation is the best that can be done. Two experienced engineers testified on the subject, and each presented two recognized methods of computation, one being based upon the proportionate amount of water cast per second from each district into the main, and the other being based upon a computation of the actual benefit accruing to each particular tract of land within the district. These methods of computation presented a considerable variance in result; from a minimum of about $4,000 to a maximum of over $7,000. The trial court adopted approximately the minimum. The basis of computation contended for by the defendant was the amount of cost of extending the original outlets a distance

of 500 feet, the contention being that such an extension would answer all the purpose of the lands above the original outlet. This theory, however, ignores the benefit accruing from a discharge of the stream 6 feet underground. It also assumes that an extension of 500 feet, without more, could have been had, and that the water might again be discharged at the surface upon the land of another, without protest or claim of damages. We are quite clear that the amounts apportioned by the order of the board were clearly too small. The proportion adopted by the trial court is fairly supported by the record, and we do not feel justified in interfering with it.

II. In the appeal of Bridget Beacom, it is claimed that her assessment was excessive, as compared with other assessments in District 90. She is the owner of a quarter section. It is on the river bottom, and has always

5. Drains: as-
sessment of
benefits: suffi-
ciency of
evidence.

been wet and boggy. Heretofore, the waters coming from the dominant lands have spread over it. The south line of her land extends to within about a half mile of the outlet in the river. The open ditch runs through the land. The contention is that she is too near the outlet to get the benefit of tile, and that the open ditch is not adequate as an outlet for tile, and that the improvement is not effective to redeem her land so as to render it tillable. If her land had been so situated that it could be tiled effectively, and thereby be rendered tillable, her assessment, in comparison with others, would have been over $1,600 to a 40-acre tract. She was actually assessed by the board at about $700 to a 40-acre tract. This reduction of amount, as compared with so-called "100 per cent 40's," was predicated upon the fact that only partial redemption of her land was effected. Part of her land was rendered tillable, and other parts were improved in value for pasture purposes. The ditch through her land was 6 feet deep. The banks

were all level, so that surface water could run in. Manifestly, a considerable outlet was afforded for tile. In times of high water, however, the river overflowed the land. A careful examination of the evidence satisfies us that, though the redemption of the land was only partial, the benefit was, nevertheless, quite substantial. Her $700 assessment was reduced by the court 20 per cent. We think that we are not warranted in interfering with the assessment as it now stands. The decree of the district court is affirmed on both appeals.—*Affirmed.*

LADD, C. J., PRESTON and SALINGER, JJ., concur.