BOARD OF SUPERVISORS OF POLK COUNTY et al., Appellants, v. JULIA D. MCDONALD, Appellee and Cross-Appellant.

BOARD OF SUPERVISORS OF POLK COUNTY et al., Appellants, v. T. W. MCDONALD, Appellee and Cross-Appellant.

BOARD OF SUPERVISORS OF POLK COUNTY et al., Appellants, v. SUSANNA HAMILTON, Appellee and Cross-Appellant.

**DRAINS: Assessment—Deference to Action of Board.** The rule of deference to the action of the board of supervisors in adjusting assessments *presupposes* that the board has, with reasonably painstaking care, availed itself of all available and material information bearing on an approximately just distribution of burdens. The rule ceases when its presupposed basis is shown not to exist. Record reviewed, and held to show that the assessments fixed by the court were more accurate than those fixed by the board.

**DRAINS: Assessments—Approximate Accuracy.** Principle recognized that an approximately correct assessment is the best that the court may hope to arrive at in threading its way through the ordinary maze of conflicting estimates bearing on the relative amount of swamp, wet, and dry land in the various tracts.

**DRAINS: Appeal—Decree Irrevocably Fixing Classification.** The district court, on appeal from assessments, may not decree that the classification found by it to be correct shall be the basis *"for future assessments by way of improvements."* (See Sec. 1989-a12, Code Supp., 1913.)

*Appeal from Polk District Court.*—JOSEPH E. MEYER, Judge.

JANUARY 20, 1920.

. APPEAL in a drainage proceeding. Certain landowners, having appealed to the district court from drainage assessments made against them, obtained partial relief on such appeal. From the finding of the district court, all parties have appealed.—*Modified and affirmed.*

*Don B. Shaw* and *Oscar Strauss,* for appellants.

*Fred F. Keithley* and *E. D. Samson,* for appellees and cross-appellants.

EVANS, J.—I. The board of supervisors for the drainage district first appealed, and are, therefore, denominated appellants. These appellants have erroneously entitled the case, both in their abstract and in their brief, by reversing the name and place of "plaintiff" and "defendant." This necessarily caused the case to be designated in this court under such erroneous title. Appellants thereby embedded their error into our records. To avoid further confusion in our own records, we entitle the case in the erroneous form in which it was designated by reason of the error of the appellants. The plaintiffs below were, in fact, the appealing landowners, and the defendants were the supervisors, as representing the drainage district. The title thus established in the district court should have been preserved here, and the case designated accordingly.

The drainage district involved is known as No. 21 of Polk County. It includes agricultural lands contiguous to the city corporation of Des Moines, town lots within the city, and railway right of ways. The parties complaining of the original assessments are Julia McDonald, T. W. McDonald, and Susanna Hamilton. They are owners of some of the agricultural lands in the district. Julia McDonald

was assessed for benefits on three tracts, of approximately
40 acres each, as follows, respectively: $2,343.75, $3,012.50,
$332.50. On appeal, the district court reduced her assess-
ments respectively to $1,781.25, $2,407.50, $268.75. Susanna
Hamilton was assessed with $4,390 as benefit to 38 acres,
and this was reduced, on appeal, to $3,790. T. W. McDon-
ald was assessed on 1½ acres at $93.75, which was reduced,
on appeal, to $46.88.

It is the contention for the supervisors that the decree
of the district court was erroneous, in that it failed to con-
firm the assessment made by the supervisors as being equita-
ble. It is contended for the landowners that the decree is
erroneous in that it failed to give them sufficient relief.

The questions involved are purely fact questions. The
general facts pertaining to the district and the establish-
ment thereof are set forth quite fully in the companion case
of *Interurban R. Co. v. Board of Supervisors,* 175 N. W.
743, and reference may be had thereto for such
facts. It perhaps ought to be conceded that the engineer-
ing scheme adopted for this improvement was ill-advised,
and more expensive than a better scheme would have been.
Instead of following the general course of natural drainage,
which was in the shape of an ox-bow, the engineering plan
cut across through high ground, which involved a cut 17
feet deep, and an average depth of 14½ feet for a distance
of half a mile. Needless to say, such half mile was very
expensive, and served no special function of benefit to the
high land through which it cut. But such plan was pre-
sented and published and adopted without objection by
any of the interested parties. It is, therefore, beyond the
reach of condemnation herein.

As to the accuracy of the amounts fixed as benefits by
the decree of the district court, we can give only a cursory
consideration. The record is not in a condition to permit
more. In the making of the record below, an appeal was

evidently not in the contemplation of the parties. The witnesses testified with plats and maps before them as exhibits. They testified that the ground was "low here" and "high there." The exhibits thus used are omitted from the record here. There was no attempt at preserving the meaning of such testimony upon the printed page. We do not, therefore, have all the testimony before us. To add to the confusion of the record, the appellants have not only erroneously entitled the case, by representing the plaintiffs as defendants and the defendants as plaintiffs, but they have failed to separate in their abstract the evidence of "plaintiffs" from the evidence of "defendants." The evidence of witnesses "for the the defendant" has been scattered here and there, pell-mell, through the evidence of witnesses "for the plaintiff," each witness being designated as "for the plaintiff" or "for the defendant." When a witness is designated therein as "for the plaintiff," we have no way to discover whether reference is thereby had to appellants' own title of the case or to the title as it ought to have been, as appears by later amendment of the appellees. Nor does appellants' index throw any light on the question.

Giving to the record, however, as full consideration as its condition will permit, some facts stand forth which require our consideration.

It is true, as contended by appellant, that we are slow to interfere with the findings and assessments of the board of supervisors, who, through their commissioners, are in the best position to do, if they will, exact justice between the beneficiaries of the improvements. But this rule of deference is not intended to encourage laxity of consideration, or to put a premium upon guesswork. We adhere to this rule the more readily where it is made to appear that the board, through its commissioners, was painstaking and careful in its investigation, and that it availed itself with

1. Drains: assessment: deference to action of board.

reasonable accuracy of all the information material to a just apportionment of the burden. This means that, if land is to be classified as 100 per cent, 80 per cent, or 50 per cent, according to its character as swampy, or wet, or low, or high and dry, then reasonable means of accuracy should be adopted as the basis of the estimates upon which such classification is based. There ought to be some degree of measurement of areas and of levels or elevations. In this case, we are impressed, from the record, that the commissioners did not avail themselves sufficiently of means of accuracy. They took no measurements. All distances and dimensions and levels were a mere estimate of the eye, and a compromise of differences in estimates. Manifestly, such estimates, however skillfully done, are subject to substantial error.

At the trial in the district court, the litigants used as witnesses expert drainage engineers, who had gone upon the ground with their instruments, and who exhibited their measurements with their testimony. The trial court was, therefore, justified in believing the work of such engineers to be more accurate than the work of the commissioners, making due allowance, in the weighing of their testimony, for the fact that such witnesses might be more or less partisan, whereas the commissioners were presumably wholly free in that regard.

Except in one respect, to be hereinafter stated, we do not feel justified in interfering with the finding of the district court on the appeal of the supervisors.

II. We turn to the appeal of Susanna Hamilton. She was the owner of a 40-acre tract, less 2 acres for highway, which was deemed by the commissioners to be the most greatly benefited of any similar tract in the district. It was, therefore, adopted as the "100 per cent forty," and was made the standard of comparison for all other tracts. Af-

2. DRAINS:
assessments:
approximate
accuracy.

ter fixing the comparative percentage of benefit of each tract in the district, the commissioners found, by computation, that one acre, classified as 100 per cent, would call for assessment of benefit of $125. The assessment upon the 38 acres was fixed at $4,390. Such assessment was reduced in the district court to $3,790. It is now contended for Mrs. Hamilton that such reduced assessment is still too high. The evidence in her behalf consists largely of a comparison between her tract and certain tracts of Julia McDonald and of Dicks and of Peterson. Evidence was also introduced to show that the tract had upon it more acreage of dry land than was indicated by the estimates of the commissioners, and that it could not be classified at 100 per cent.

It is first to be said that a classification of a tract at 100 per cent does not require, as a basis therefor, a complete absence of dry land from such tract. The case of cross-appellant is argued somewhat upon the theory that only tracts which are *wholly* swampy or wet can be classified at 100 per cent. There is a certain practical sense in which this is true. On the other hand, the theory of the classification is that the percentage fixed upon a tract is comparative only. Theoretically, "100 per cent" is adopted as the starting standard, and applies to the *wettest* tract, and from this standard the percentages of the other tracts are scaled. It is not theoretically necessary that the tract selected as the 100 per cent tract should be as extensively or thoroughly wet as is the 100 per cent tract in some other district. It is only necessary that it shall represent the maximum in the particular district. If it does fairly represent the maximum, then the fact that the tract may have more or less dry acreage does not forbid its classification at 100 per cent. As a matter of practical convenience in the making of estimates and comparisons, it is undoubtedly desirable that the area selected for the 100

per cent classification should be virtually uniform in character 'as wholly wet. In selecting a 40-acre tract as the standard, it is often true that it contains more or less dry area, and that this should be considered in the comparison for classification. As a .practical fact, in spite of theory, commissioners do make allowance for such dry area, and did so in this case. Though they denominated it the 100 per cent forty, yet, because of the dry area thereon, they reduced this maximum percentage, and assessed on the basis of about 90 per cent. They said, in effect, that they did confine the 100 per cent classification to the area actually wet, and that there was no 40-acre tract in the district which they classified entirely at this maximum.

It stands conceded, therefore, that not all the acreage of the Hamilton 40-acre tract should be classified at 100 per cent, and that it was not so classified. The effect of the decree in the district court was to give it an average classification of about 80 per cent. The conflict in the evidence is over the question of how many acres of wet and dry land, respectively, are contained within the tract. The cross-appellant presented expert engineers as witnesses. These engineers presented their measurements and computations, and testified with marked candor. Their estimates were that the assessments on this tract should have been approximately $3,200. This would reduce the classification to less than 70 per cent. The assessment would be about $600 less than that fixed by the trial court. If the proper amount of assessment could be fixed with certainty as a mere matter of computation, the figures of these engineers would be persuasive. But even though the engineers went upon the ground, and made their measurements accurately, the fact remains that they had to select their points and lines from which they made such measurements. The demarcation between the "wet" and "dry" areas upon this tract was not a mere *line*, without dimensions, which could

be selected with certainty for the purpose of measurement. On the contrary, it was a *zone* of substantial and varying width. The selection of the starting point within this zone for the purpose of measurement was a mere matter of judgment and estimate. This zone is, in reality, the zone of dispute in the conflicting evidence. The computations of the witnesses pro and con may be readily reconciled, but their judgments and estimates which furnish the basis of their computations are more wide apart, and cannot be reconciled. Some of the dry area found by the experts of the cross-appellant is in the midst of the swampy area. Needless to say, a small acreage of dry land surrounded with swamp is, in a practical sense, the equivalent of the swamp, and a part of it. The trial court seems to have found the median line between the conflicting estimates, and allowed the cross-appellant about one half of the relief which her engineers computed as her due. We cannot say, upon this record, that such finding of the district court is not approximately correct. In this class of cases, approximation is the best the courts can do. We reach the conclusion, therefore, that there is no such showing upon this record as to justify our interference with the decree on the appeal of this cross-appellant.

III. We pass to the cross-appeal of Julia McDonald. Assessments upon three of her tracts are involved. Two of these were very wet tracts, but received a somewhat better classification than did the tract of Susanna Hamilton. Much that we have already said in the foregoing division is equally applicable here. In the argument of this cross-appeal, much stress is laid upon the failure to assess more heavily the higher lands included in the district. We have no jurisdiction to increase the assessments on such lands. If we were to find, however, that they were not bearing their fair share of the burden, it would necessarily follow that an undue share fell somewhere else. It quite goes without

saying that the manifest benefit of underground drainage goes to the servient lands, and that they should, in justice, bear the substance of the burden; and this is especially so where such servient lands are of such topography that they retain standing water. These are the lands whose benefits from drainage are so apparent and tangible that the owners petition for the establishment of a drainage district. Drainage benefits to high lands, the topography of which is such as to cast off all surface water, is not apparent, or even discernible, to the average owner thereof, and he never, or at least seldom, appears as a petitioner for a drainage district.

It appears from the evidence herein, in a very indefinite way, that the high lands in this drainage district are very high, and more or less sandy. For aught that appears, the presence of water is the least of their troubles. The evidence does not deal otherwise with description of these high lands and of their condition, as bearing on the question of drainage benefits. The cross-appellant introduced the opinion evidence of witnesses that these lands ought to have been assessed at a higher percentage. Such is the evidence upon which she relies for a modification of the decree on this ground. We think the evidence is not sufficient in its details to warrant any interference on our part in this regard. The same may be said as to the alleged insufficiency and absence of assessments of railroad right of ways.

We reach the conclusion here, also, that the record will not justify us in granting this cross-appellant more relief than she obtained in the district court.

IV. The cross-appeal of T. W. McDonald has somewhat the appearance of a tail which is following the hide. McDonald was the owner of an acre and a half. Most of it was comparatively dry, though some of it was sour. It was surrounded with swamps. The commissioners as-

sessed the benefits at $93.75. The decree of the trial court found the benefits to be $46.88. It is claimed that this amount is still too high. The finding has the merit of being definite and exact. Against such a finding, we should be slow to interpose the guesswork of round numbers. If we should reduce this assessment to $40.00, we should be unable to say, from the evidence in this record, why we cut off the $6.88. If one amount be actually correct, the other is approximately so. . It is not practicable for an appellate court, upon a printed and abstracted record, to correct the amount of a finding below which is so near the line of approximation.

We reach the conclusion, therefore, that this diminutive appeal must go out in the same caudal order as it came in.

V. We revert to the appeal of the supervisors. The decree entered below provided that the classifications therein found should be the basis, not only of present assessments of benefits, but "for future assessments by way of improvements." Complaint is made of this provision, as one of the grounds of reversal. Is this a proper provision to embody in the decree?

3. DRAINS: appeal: decree irrevocably fixing classification.

Section 1989-a12, Code Supplement, 1913, provides:

"This classification when finally established shall remain as a basis for all future assessments connected with the objects of said levee or drainage district, unless the board, for good cause, shall authorize a revision thereof."

The provision of the decree complained of was probably intended as a response to the statute as here quoted. No question pertaining to future assessment is here presented. There is, therefore, no such question to be adjudicated. The statute would speak without any aid from the decree. Under the statute, the classification adopted becomes presumptively the appropriate classification for fu-

ture assessments for improvements. But it is presumptive only. The statute preserves to the supervisors the power to make a different classification for future improvements, if "good cause" appear therefor. The needed future improvement might be such as to render marked benefit to one or to some, and comparatively little to others, regardless of benefits received from the original improvement. For instance, we have held that, where the improvement consists of a deepening and extending of a shallow outlet, the principal benefit of such improvement inures to those lands nearest the original outlet, even though they had been classified as receiving little benefit from the original improvements, because of the shallow outlet and their proximity thereto. *Christenson v. Board of Supervisors,* 179 Iowa 745; *Loomis v. Board of Supervisors,* 186 Iowa 721.

It is conceivable that just such a future improvement may be made in this drainage district. The statute on this subject not only has no need of aid from the decree; it *is* not aided by this provision thereof. If this provision of the decree can be deemed to have any force or effect, it is that it adjudicates the present classification irrevocably as a basis for future assessments for improvements of whatever kind. Its effect, therefore, is to bar the proper operation of the statute. This provision of the decree, wherever it appears therein, should, therefore, be stricken. To this extent, the decree below will be modified. In all other respects, it is affirmed on all appeals.—*Modified and affirmed.*

WEAVER, C. J., LADD, PRESTON, and SALINGER, JJ., concur.