LOIS W. BLOOMQUIST, Appellee, v. BOARD OF SUPERVISORS, HARDIN COUNTY, Appellant.

FANNIE W. EMENY, Appellee, v. BOARD OF SUPERVISORS, HARDIN COUNTY, Appellant.

**DRAINS: Nonallowable Amendment on Appeal.** Objections before 1 the board of supervisors that an assessment is illegal and inequitable, because of (1) nonbenefits, (2) nonproportional benefits, and (3) inability to tile into the drain, may not be enlarged on appeal by a so-called amendment asserting that the commissioners to assess benefits wholly failed to qualify or act as such commissioners.

**DRAINS: Waiver by Landowner of Illegal Procedure by the Board.** 2 Irregularity and illegality of procedure by the board in exercising its conceded jurisdiction over a drainage proceeding may be waived by an objecting landowner. So held where it was assumed that the board had resolved that an assessment for improving an existing ditch should be made in the proportions adopted for the original construction, and thereafter appointed the commissioners of benefits, who computed the assessment in accordance with the resolution, and returned it to the board, and the landowner did not object thereto, except on appeal from the action of the board in confirming the assessment.

**DRAINS:** Theory of Hearing before Board Followed on Appeal.
3 The theory of a hearing before the board, that the amounts of assessments were subject to change on meritorious showing, will be followed on appeal, even though the board, in view of its former action, might have taken the position that such assessments were a mere matter of mathematical computation, and subject to no change except for error in so computing.

**DRAINS:** New Improvement (?) or Repair (?) The fact that the cost of an improvement on an existing drain is almost double the cost of the original construction is very persuasive that such improvement should not be classed as a *repair*.

**DRAINS:** Implied Annulment of Proceeding. A resolution by the board, ordering an assessment for improving an existing drain to be computed in the proportions which governed in the original construction, is impliedly annulled by the action of the board in treating the assessment, on objection by a landowner, as subject to change on a showing of inequitableness.

**DRAINS:** Inequitable Assessments Between Upper and Lower Owners. Record held to demonstrate that the assessment of lands near the outlet of a drain, where but little of the cost accrued, was inequitable, when compared with assessments of lands at the far-removed source of the drain, where a very large proportion of the cost did accrue.

*Appeal from Hardin District Court.*—G. D. THOMPSON, Judge.

APRIL 13, 1920.

IN the district court, this was an appeal from an assessment of benefits. Two appeals were consolidated, and tried as one. On trial in the district court, a reduction was allowed to the plaintiffs to the extent of 33⅓ per cent. Both parties appealed. The defendant board of supervisors, having first perfected its appeal, appears in this record as appellant.—*Affirmed.*

*Peisen & Soper, H. L. Adams,* and *George E. Hise,* for appellants.

*C. G. Lee, C. W. Garfield,* and *T. G. Garfield,* for appellees.

EVANS, J.—The drainage improvement under consideration was made to and upon a former drainage improvement, and consisted of cleaning, deepening, and widening an open ditch, formerly constructed, and of converting a substantial portion of the same into a covered tile drain. It involved no change of the boundaries of the former district or of the line of location of the former drain. It did, however, appropriate more land for the widened ditch and the increased berms. The former district was known as No. 3, of Hardin County; and known also in the record as the Dougan district. It was originally established in 1909. The drain consisted of an open ditch, 9 miles long. The original improvement proved inadequate in depth, in many places, to afford adequate outlet for its watershed. Upon presentation of a petition by one of the property owners whose land was situated near the upper end of the drain, the present improvement was inaugurated. Appropriate resolution of necessity and notice and hearing were had, and the improvement ordered, and contract let. The improvements were completed in 1916. The original drain was 48,500 feet in length, divided into 485 stations, of 100 feet each. These stations were numbered from the outlet up. For the first 80 stations, no new work was required. From Station 80 to Station 351, the ditch was deepened, on an average, between 3 and 4 feet. From Station 351 to Station 485, there was a similar average of deepening. This latter section also was converted into a covered tile drain. The size of the largest tile was 28 inches, which was gradually reduced to 20 inches at the upper end. The cost of the improvement was nearly double the cost of the original improvement, and amounted to over $30,000. Three fourths of the cost was incurred in the upper section, where the tile was laid. This section was two and one-half miles in length, extending from Station 351 to 485. The plaintiffs'

lands are not contiguous to this section of the drain, but are located near the lower end.

The opening argument before us is made by the plaintiffs, and their appeal is presented therein.

I. On December 28, 1916, a hearing was had in the matter of the assessments of benefits, pursuant to notice by the board. At such hearing, the plaintiffs appeared, and presented objections to be hereinafter set out. In response to such objections, a few minor changes were ordered by the board. In other respects, the objections were overruled, and the proposed assessments were confirmed.

While the appeal of plaintiffs was pending in the district court, the plaintiffs filed an amendment to their petition, which was in the nature of additional objections. This amendment alleged certain illegalities

1. DRAINS: non-allowable amendment on appeal.

in the proceedings of the board, in that the commissioners appointed by the board never, in fact, qualified or acted as such, and that they did not, in fact, inspect the lands nor classify the same, nor did they make the purported report which was acted upon at the hearing of December 28th; that the board adopted a resolution on September 1, 1916, whereby it was ordered that the assessment of benefits for the new improvement should be in the same proportion as that adopted in the construction of the original improvement; that, in obedience to this resolution, the plat of the proposed assessments was prepared by mere computation by one of the commissioners, and was presented as the report of the commissioners; that the board, therefore, had no power or jurisdiction to act upon such report or to confirm such proposed assessments; and that the action of the board was null and void. The prayer is that the assessments against plaintiffs be canceled *in toto,* as a nullity.

To grant the prayer of this amendment to petition would necessarily result in a remand of the case to the

board of supervisors for further proceedings. The first question confronting plaintiffs is whether the objections thus raised by this amendment are available to them, or whether they waived such objections by failing to make them at the hearing before the board. The objections actually presented to the board and by it considered were as follows:

"As grounds for their objections, they state that the assessment is illegal, inequitable, and unjust, for the reason that the land attempted to be assessed for the purpose of the alleged improvement is not, in fact, benefited.

"Second. That the assessment attempted to be levied against the parcels of land belonging to these objectors is unjust and inequitable, because it is a larger assessment, in proportion to the benefit received, than other lands similarly located.

"Third. The assessment is inequitable, illegal, and unjust, for the reason that the land sought to be assessed is not, as a matter of fact, benefited by the proposed improvement, and the proposed improvement does not afford the land of these objectors an adequate outlet.

"Fourth. That the assessment is inequitable, illegal, and unjust, for the reason that a large portion of the land belonging to these objectors cannot be tiled into the open ditch constructed across their land, for the reason that the said open ditch is not of sufficient depth to afford the land an adequate outlet for tile."

The original petition filed in the district court by the plaintiffs on their appeal was predicated wholly upon the foregoing objections, presented to the board. We think it clear that such objections do not afford a basis for the amendment to the petition. The case illustrates the substantial importance of the statutory requirement that objections to be relied upon shall be made, in the first instance, before the board itself. If this had been done with the directness of specification which appears in the amendment

to the petition, it is to be presumed that the board would have taken appropriate action thereon. The opportunity for such action should have been presented to it. To reserve objections so vital, and to present them for the first time on appeal, is the very practice which the statute aims to prevent. To permit it, could only result in a disastrous circumlocution of appellate procedure. It must be held, therefore, that the objections made in plaintiffs' amendment were waived by the failure to incorporate the same in the objections before the board, unless the jurisdictional character of the alleged illegalities be such that they could not be waived, or could not be cured by waiver.

Assuming, for the moment, that the action of the board, thus set forth, was irregular and illegal, could the illegality be cured by the party adversely interested? The board had complete jurisdiction of the subject-matter: that is, of the drainage proceeding. The illegality complained of was one which the board itself could have readily cured by correcting its procedure. The power of the plaintiffs to *waive* correct procedure was quite co-extensive with the power of the board to *correct* its procedure. If the illegality defeated the jurisdiction of the board in any sense, it was a jurisdiction of the *res*, and not of the subject-matter. It was, therefore, subject to waiver by the party adversely affected, and his consent to jurisdiction was thereby implied. *In re Appeal of McLain*, 189 Iowa—.

2. DRAINS: waiver by landowner of illegal procedure by the board.

We hold, therefore, that the objection to jurisdiction thus raised by plaintiffs was waived before the board, and that the plaintiffs can be heard on appeal only on the objections presented to the board.

II. Does it follow, from our holding in the preceding division, that the plaintiffs are foreclosed from contesting the assessments at all? If the resolution of September 1st

was valid and effective, it would seem to fol-

**3. Drains:**
**theory of hear-**
**ing before**
**board followed**
**on appeal.**

low, of logical necessity, that it left noth-
ing to appeal from, except, possibly, the or-
der itself. The classification having been
fully determined in the establishment of the
original improvement, it would leave nothing to be done but
computation, in order to determine the present additional
assessments. The parties, however, did not proceed upon
this theory in the proceedings before the board. The board
gave notice of the hearing upon the proposed assessments.
In such notice, it described the proposed assessments as a
report of the commissioners. At the hearing, it sustained
some of the objections on their merits, and modified some
of the assessments responsive thereto. Subject to such
changes, its final order of confirmation was as follows:

"Therefore, be it resolved that the assessment as re-
turned by the commissioners as above modified and changed
be and the same is hereby established as and for the assess-
ment for said drainage district."

The proposed assessment upon which the hearing was
had, purported to be a report of the commissioners, and was
regular upon its face as such. Clearly, the mutual theory
of the case in the hearing before the board,

**4. Drains: new**
**improvement (?)**
**or repair (?)**

adopted by both parties, was that the pro-
posed assessments were subject to review by
the board, upon a proper showing of merit.
This would be quite a sufficient reason why we should hold
the parties to a trial on appeal upon the same theory and
upon the same issues as were considered before the board.
Other features of the record lead us in the same direction.
The parties disagree as to whether the proceeding pertain-
ing to the improvement is controlled by Section 1989-a21
or by 1989-a25, Code Supplement, 1913. The former relates
to *repairs,* and the latter to *new improvement.* The board

followed the procedure provided for a new improvement. It adopted a name for the improvement as such. Its only departure from the regular procedure for a new improvement was its resolution of September 1st and the resulting influence of such resolution upon the action of the commissioners. The distinction between a new improvement and the mere repair of an old one is not always readily drawn. In doubtful cases, the comparative cost of the additional improvement, as compared to the cost of the original improvement, is an important circumstance in the solution of doubt. Ordinarily, repairs are supposed to cost only a part, and usually a small part, of the cost of the original improvement. The cost of the improvement in this case was 190 per cent of the cost of the original improvement. Manifestly, the circumstance of comparative cost, therefore, is one of great magnitude, and tends strongly to support the contention that the procedure should be controlled by Section 1989-a25. Such is our conclusion.

Indeed, we should be reluctant to hold, in any case, that an expenditure of 190 per cent of the cost of an original improvement should be deemed a mere repair thereof. It necessarily follows that the plaintiffs have a right to be heard on the merits of their objections presented to the board. Their right of hearing on appeal to the district court was co-extensive with their right of hearing before the board. If they had a right to a hearing before the board, it was not foreclosed by the ex-parte resolutions of September 1st. If the plaintiffs were entitled to notice of final hearing, the resolution itself was premature and ineffective for want of such notice.

Though the resolution purported to adopt the original apportionment for the new assessment, as provided in Sections 1989-a12 and 1989-a21, yet we have held that such pro-

vision is not mandatory, except in the ab-

**5. DRAINS: implied annulment of proceeding.** sence of good cause for a different apportionment. *Christenson v. Board of Supervisors,* 179 Iowa 745; *Loomis v. Board of Supervisors,* 186 Iowa 721; *Board of Supervisors v. McDonald,* 188 Iowa 6.

That a good cause existed in this case for a different apportionment of benefits, by reason of the construction of expensive tile drains over the upper section of the course, appears quite conclusively, under the evidence.

If the plaintiffs had had no right to a hearing or to a notice, a somewhat different question would be presented as to the effectiveness of the resolution of September 1st. Even then, if the board had a right to adopt an ex-parte resolution without notice, it had the same right, likewise, to annul it. The board, having given notice of a final hearing, and having held the same, and having acted thereon, should not be heard thereafter to say that the plaintiffs were not entitled to a hearing at all, because of its previous resolution. Its subsequent procedure was a virtual annulment of the resolution. It would be idle to grant a hearing to the landowners, if a hearing were already foreclosed by the previous resolution.

Inasmuch as we hold the case to be controlled by the sections pertaining to new improvement, rather than by Section 1989-a21, as pertaining to mere repair, we have no occasion to decide whether, under the latter section, the plaintiffs would have been entitled, as a matter of right, to a notice of final hearing thereunder. For the time being, we are not wholly agreed upon that particular question.

III. A reading of the record satisfies us, also, that the trial court properly held that the plaintiffs were entitled to some modification of the assessments against them. It

will not be practicable for us to go into the **6. DRAINS: in-equitable assess-ments between upper and lower owners.** details of the evidence. As between the district area contiguous to the new tile drain, and the district area far removed therefrom down the course, there is little room for doubt, under the evidence, that the proportionate benefit from the new improvement accruing to the upper area was substantially greater than such benefit accruing from the original improvement could have been, and that the proportionate benefit to the lower area was accordingly less. The trial court reduced the assessments of the plaintiffs 33⅓ per cent. As we have often said, approximation is the best that we can do in this class of cases.

By consent of the parties, the trial judge and opposing counsel went upon the ground, and viewed the improvement and its watershed. The advantage of such a course, as an aid to careful judgment, is self-evident. The conclusion reached by the trial court has substantial support in the printed evidence. Both parties appealed from its finding, the plaintiffs contending for a reduction of not less than 60 per cent, and the defendants resisting any reduction at all. We think that the order made by the trial court presents as near an approximation as we can make, under the record before us.

In the consideration of the record in this class of cases, the first presumption obtains in favor of the finding of the board. It is presumed that it has acted with the aid of the commissioners, including their engineer, and that these commissioners have made a careful inspection of the improvements and the land affected by them. The fact that such procedure was not followed in this case of itself tends to negative the presumption which would otherwise obtain.

The record before us contains the evidence of the en-

gineers, who have made careful inspection, and taken the elevations with appropriate instruments. The trial judge had the advantage of weighing this evidence in the light of his own personal inspection of the grounds. We think the result reached is approximate equity. The order of the district court will be affirmed on both appeals.—*Affirmed.*

PRESTON, SALINGER, and STEVENS, JJ., concur.

WEAVER, C. J., concurs in result.