ANDREW RASCH, Appellant, v. DRAINAGE DISTRICT No. 10, Appellee.

**DRAINS:** Assessments—Ignoring Elevations. An assessment of benefits for a public drainage improvement, even though it represents the combined judgment of the commissioners, of the board of supervisors, and of the district court, must yield to a showing, through the medium of an unquestioned private survey and other testimony, that due consideration was not given to the *relative elevations* of different parts of land, and that such failure resulted in undue assessments' being made on areas which required no drainage.

*Appeal from Shelby District Court.*—GEORGE W. CULLISON, Judge.

JUNE 24, 1924.

APPEAL from an assessment for benefits assessed against certain land of plaintiff's in Drainage District No. 10 in Shelby County, Iowa, by the board of supervisors of said county, acting as a drainage board. The trial court confirmed the assessments, as entered of record in the drainage records of Shelby County, Iowa. Plaintiff appeals.—*Modified and affirmed.*

*Edward S. White*, for appellant.

*Shelby Cullison*, for appellee.

DE GRAFF, J.—The issues in this case arise on the objections filed by the appellant with the board of supervisors of Shelby County, Iowa, acting as a drainage board in Drainage District No. 10 in said county, to the assessments on lands owned by the appellant within the said district. The land within the district comprised 13,000 acres, or 325 forty-acre tracts. The drainage ditch was 23 miles in length. The primary grounds for objection to the assessments in question, and as stated by appellant in the propositions relied on for reversal, are: (1) That the assessments made against each of the tracts of land owned by appellant were excessive, and not in accordance with the actual benefits received; (2) that the assessments in question are excessive and inequitable, as compared with the assessments made on like lands in the drainage district; and (3) that excessive and inequitable levies resulted, for the reason: (a) That the commissioners who assessed benefits gave no consideration to the fitness of the land of appellant for agricultural purposes prior to the drainage construction, and (b) made no distinction between essentially swamp land and land merely subject to some occasional temporary but not highly damaging overflow, or in not taking their basic or 100 per cent 40, the 40 that was most in need of drainage to make it agriculturally productive and useful, and (c) took no levels, ran no lines, made no measurements of areas for the purpose of a proper classification of the lands involved, and did not give adequate time to the work of classification for the purpose of making said assessments.

This court is slow to interfere with the findings and assessments of a board of supervisors through its commissioners. We recognize that the local boards are in a better position to do justice between the beneficiaries of the improvement; but "this rule of deference is not intended to encourage laxity of consideration, or to put a premium upon guesswork." *Board of Supervisors v. McDonald,* 188 Iowa 6. We must give weight to the training and experience of expert drainage engineers, whose opinions are usually found in their testimony; and especially is this true when it is shown that they have gone upon the ground with their instruments, and their measurements and computations are found in the abstract of record.

In the instant case, the appraisers consisted of an engineer and two citizens of Shelby County. It appears that, in making the assessment, the commissioners first drove up the valley from the mouth of the ditch to its head, for the purpose of looking over the land and discussing how the various kinds of land should be classified. They began their work of assessment when they reached the commencement of the ditch. The lower lands and the land generally adjacent to the river were taken as 100 per cent land. Any 40 that was all or nearly all subject to overflow was 100 per cent land, and no deduction was made for a knoll or two which would not be covered with water during an overflow. The assessments, however, were not made solely from the standpoint of overflow, but included the benefits derived from drainage of the land resulting from subdrainage. The commissioners made the assessments from what is termed by them a practical standpoint, and about nine days were consumed in the work. Commissioner Gingery testified:

"I didn't look at it so much from an engineering standpoint. The land showed for itself, as a rule. We had to do the best we could. We could not go to the expense to survey generally these forties. We did not have any instruments, and did not take any levels at all, in looking over these lands. We used the plat made by Engineer Mayne. Just once in a while we consulted the elevations. We used our judgment of the land, as we were looking upon each tract."

After the commissioners filed their report, to which objections had been made by appellant, the board of supervisors

spent two days going over the district for the purpose of re-
view, and this resulted in a few changes in assessments. The
commissioners testify that appellant's land received substan-
tially the same benefits as other lands similarly assessed. If the
evidence supports the opinion expressed, there is no ground for
interference by this court; since the rule of assessment is equi-
table apportionment of the cost among the various tracts in the
district. The assessments must represent a fair proportional
part of the total cost of the improvement. *Rogers v. Board of
Supervisors,* 195 Iowa 1; *Chicago, R. I. & P. R. Co. v. Wright
County Dr. Dist.,* 175 Iowa 417; *Mayne v. Board of Supervisors,*
178 Iowa 783; *Chicago & N. W. R. Co. v. Board,* 182 Iowa 60.

The plaintiff called an expert drainage engineer as his wit-
ness, who, it is shown, took levels and readings on various parts
of these lands, and made a topographical map. Three parcels
of real estate belonging to plaintiff are involved in this case,
which, for convenience, we will call the north 20-acre tract, the
middle 40 immediately south thereof, and the south 40, immedi-
ately south of the middle 40. With reference to the 20-acre
tract, plaintiff's engineer testified:

"On the east part of that 20, the Nishnabotna River cuts
into it a little, cutting off a fraction of an acre, and then goes
out again. What we would call low land amounts to about 2
acres. The rest of the 20 acres would be called high, and even
hilly, land."

Respecting this 20, plaintiff testified:

"It is all upland, with the exception of the very east part
of it. I have been familiar with the flood conditions on that
20 acres for some time. I have never seen the time when there
was more than an acre or an acre and a half, on the outside, that
was under water. The tract that I have seen under water is
at the east end of the 20 acres, right north and a little west of
the bend of the stream. There is no overflow land in the south-
west corner. I would judge that there is 18 acres or more that
has never been under water. This land, except one-half acre, is
in corn this year. It is a good crop, and will yield between 75
and 80 bushels per acre."

With reference to the middle 40, plaintiff's engineer tes-
tified:

"The north half of the north 40 would almost come under the term hilly. It is quite high. It runs some 30 or 40 feet above the level of the low land. The west half of the 40, along the east side of the highway, is quite high at the northwest corner, running up as high as 20 or 25 feet or more above the general low land. As to the 20-acre tract, there are 2 acres that are low. I would not say that the rest of the 20 acres is benefited at all, and would say that the entire 20 is 10 per cent land. The middle 40, as near as I could trace the flat ground that might be, benefited by being more quickly drained off by quick drainage, is about 50 per cent of that 40, and I would call it 50 per cent land. On the south 40 there is a knoll in the southeast corner that never has been flooded, two acres and a half, and there is a sloping hill on the northwest corner. I think at least 4 acres of ground is not affected in any way by high water. I figure that land 90 per cent."

Plaintiff, Rasch, testified as to the middle 40:

"On that hill there is 15 or 16 acres of high land. There is, besides this other high land on that forty, somewhere around 5 or 6 acres, the entire length of the 40 on the west side. The river enters this 40 close to the center, north and south. The low land is in that vicinity. There is somewhere around 18 or 20 acres of low land on this 40, the lower land laying right up against the creek. During flood conditions I have seen 6 or 7 acres of this 40 under water. These floods come and go generally within 24 hours. This 40 is in crops this year, corn and oats. In other years I have grown good crops on this 40. Only once have the floods interfered with the growing of crops on this 40. There was some damage that year, in 1919."

There is no question that the south 40 is the least desirable. It is all flat, with the exception of a knoll on the south side, in area about 2 or 3 acres. Plaintiff's engineer testified, with respect to the south 40, that he thought at least 4 acres of ground were not affected in any way by high water, and estimated this land 90 per cent land.

We are impressed with the testimony offered by plaintiff as to the topography of the land in question. It is convincing, and is not seriously contradicted. We do not feel that the commissioners availed themselves sufficiently of the means of accur-

acy in fixing the basis for these assessments. There should be some degree of measurement of areas and of levels or elevations. A mere estimate by the eye is not the equivalent of mechanical instruments. As said in *Board of Supervisors v. McDonald*, supra: "Manifestly, such estimates, however skillfully done, are subject to substantial error." High or dominant lands have little need of artificial drainage, and should not be caused to bear a larger portion of burden than the servient or lower estates that must receive the natural drainage of the higher land. *Jenison v. Greene County*, 145 Iowa 215; *Thielen v. Board of Supervisors*, 179 Iowa 248. In determining the equitable measure of contribution, the burden to be imposed must be in proportion to the actual benefits received by the lands assessed; and in determining whether an excessive proportion of the total cost has been charged against a given tract of land, it is proper to consider the relative productiveness of the land before and after drainage, and the relative drainage enjoyed by the land before the drain is constructed.

· As to the two upper tracts, the discrepancy in estimates is noteworthy. Furthermore, we conclude that the assessments are inequitable, as compared with other forties within the drainage district. We deem it unnecessary to incumber this opinion with a recital of these comparisons. It may be stated that the plaintiff himself has acted as a commissioner in drainage projects in Shelby County, and was a man of practical experience. To sustain the finding on the 20-acre tract and the middle 40 would put a premium on guesswork, as compared with the careful examination and mathematical computations of the plaintiff's engineer, supported by the intimate and long acquaintance of plaintiff with the land, and corroborated by neighboring landowners.

The commissioners' report, approved on appeal in the district court, classified the 20-acre tract as 35 per cent land, the middle 40 as 90 per cent, and the south 40 as 100 per cent land; making the assessments against the three tracts in the sum of $245.60, $1,224.72, and $1,260, respectively, or a total assessment of $2,730.32. The record, in our judgment, fails to sustain the decree entered, and it is hereby ordered that the 20-acre tract shall be assessed in the sum of $137.16, the middle

40 in the sum of $816.48, and the south 40 in the sum of $1,260, with costs taxed to appellee. Wherefore, the decree is modified and affirmed, with direction to the trial court to enter orders and decree in conformity to this opinion.—*Modified and affirmed.*

ARTHUR, C. J., and VERMILION, J., concur.

STEVENS, J., concurs in the result.